1  Howard A. Friedman, SBN 61187
   hfriedman@fagenfriedman.com
2  Kimberly A. Smith, SBN 176659
   ksmith@fagenfriedman.com
3  FAGEN FRIEDMAN & FULFROST, LLP
   6300 Wilshire Boulevard, Suite 1700
4  Los Angeles, California  90048
   Phone: 323-330-6300
5  Fax: 323-330-6311

6  Attorneys for Defendant San Mateo Union High
   School District

7

8                    **UNITED STATES DISTRICT COURT**

9       **NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**

10

11  ERIC RODRIGUEZ AND KIMBERLIN       CASE NO. C 07-02360 PJH
    RODRIGUEZ,
12                                      **OPPOSITION TO PLAINTIFFS'**
                   Plaintiff,           **MOTION FOR SUMMARY JUDGMENT;**
13                                      **MEMORANDUM OF POINTS AND**
           vs.                          **AUTHORITIES IN SUPPORT THEREOF**
14
    SAN MATEO UNION HIGH SCHOOL         Date:    April 9. 2008
15  DISTRICT,                           Time:    9:00 a.m.
                                        Crtrm.:  3
16                 Defendant.

17

18  / / /

19  / / /

20  / / /

21

22

23

24

25

26

27

28

Fagen Friedman& Fulfrost, LLP
6300 Wilshire Boulevard, Suite 1700
Los Angeles, California  90048
Main: 323-330-6300 • Fax: 323-330-6311

**TABLE OF CONTENTS**

Page

I.    FROM MARCH 29, 2004 THROUGH JUNE, 2006, ERIC WAS A PRIVATELY
      PLACED STUDENT TO WHOM THE DISTRICT HAD NO OBLIGATION TO
      PROVIDE A SPECIAL EDUCATION PLACEMENT OR SERVICES. ..........................1

      A.    Plaintiffs' Claim Regarding Eric's Status as a Ward of the Juvenile Court is
            Barred By The Failure to Exhaust Administrative Remedies. ...................1

      B.    Plaintiff's Adjudication as a Ward of the Juvenile Court Did Not Obligate
            the District to Fund His Placements From March 29, 2004 through June,
            2006..................................................................................................3

      C.    The District Was Not Obligated to Provide FAPE from March 29, 2004
            through June, 2006 Due to the Private Placement. ...................................9

II.   FROM JULY 19, 2003 UNTIL HIS PLACEMENT OUTSIDE THE DISTRICT,
      THE DISTRICT PROVIDED ERIC WITH  A FREE AND APPROPRIATE
      PUBLIC EDUCATION ................................................................................12

      A.    The District Did Not Fail to Assess Eric's Behavioral Needs..................12

      B.    Plaintiffs' Claim Regarding Eric's November 12, 2002 IEP is Barred Both
            by the Applicable Statute of Limitations and Their Failure to Their Exhaust
            Administrative Remedies. ...................................................................14

      C.    Plaintiffs' Claim Regarding Eric's May 2003 IEP is Barred Both by the
            Applicable Statute of Limitations and Their Failure to Their Exhaust
            Administrative Remedies. ...................................................................15

      D.    The District Adequately Met Eric's Needs in the Area of Speech and
            Language. .........................................................................................16

      E.    The District Did Not Deny Eric a FAPE by Failing to Provide Mental-
            Health Services. .................................................................................17

      F.    The District Did Not Deny Eric a FAPE by Failing to Have All Necessary
            Attendees at Eric's IEPs......................................................................18

      G.    The District Did Not Deny Eric a FAPE by Failing to Ascertain His Present
            Levels of Functioning as of the November 2003 IEP. .............................19

III.  PLAINTIFFS ARE NOT ENTITLED TO REIMBURSEMENT FOR ERIC'S
      PRIVATE SCHOOL PLACEMENT AND RELATED TRANSPORTATION
      COSTS FROM MARCH 2004 TO JUNE 2006 ............................................20

      A.    Plaintiffs Failed to Demonstrate that the District Denied Eric a FAPE.................20

      B.    Plaintiffs Failed to Demonstrate that the Private Placements Were
            Appropriate.......................................................................................21

Fagen Friedman & Fulfrost, LLP
6300 Wilshire Boulevard, Suite 1700
Los Angeles, California 90048
Main: 323-330-6300 • Fax: 323-330-6311

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Fagen Friedman & Fulfrost, LLP
6300 Wilshire Boulevard, Suite 1700
Los Angeles, California 90048
Main: 323-330-6300 • Fax: 323-330-6311

C.    Plaintiffs Failed to Provide the District Adequate and Required Notice of
        Their Intent to Privately Place. .............................................................................23

IV.    CONCLUSION ..........................................................................................................25

C 07-02360 PJH

OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

**TABLE OF AUTHORITIES**

Fagen Friedman & Fulfrost, LLP
6300 Wilshire Boulevard, Suite 1700
Los Angeles, California 90048
Main: 323-330-6300 • Fax: 323-330-6311

**Page**

**FEDERAL CASES**

*B.B. v. Hawaii Dept. of Educ.,* 483 F.Supp. 1042 (D. Hawai'i 2006) ............................................ 19

*Berger v. Medina City Sch. Dist.*, 348 F.3d 513, 524 (6th Cir. 2003) ..................................... 20, 23

*Board of Educ. of the Hendrick Hudson Central Sch. Dist. v. Rowley,* 458 U.S. 176, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982) ..................................................................................... 16, 20

*Board of Educ. for Oak Park and River Forest High Sch. Dist. v. Illinois State Bd. Of Educ. and Kelly E.,* 21 F.Supp.2d 862, 877 (N.D. Ill. 1998) .................................................... 17

*Burlington v. Dep't of Educ.,* 471 U.S. 359, 373-374, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985) ............................................................................................................................... 20, 21

*Clovis Unified Sch. Dist. v. Office of Admin. Hearings*, 903 F.2d 635 (9th Cir. 1990) ................. 20

*Dreher v. Amphitheater Unified Sch. Dist.*, 22 F.3d 228, 231 (9th Cir. 1994) .............................. 15

*Florence County Sch. Dist. v. Carter ("Carter"),* 510 U.S. 7, 114 S.Ct. 361, 126 L.Ed.2d 284 (1993) ............................................................................................................................. 20, 21

*French v. Omaha Public Schools,* 766 F.Supp. 765 (Neb. 1991) ................................................ 19

*Hoeft v. Tucson Unified Sch. Dist.*, 968 F.2d 1298, 1303 (9th Cir. 1992) ...................................... 2

*Honig v. Doe,* 484 U.S. 305, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988) ............................................ 7

*Magyar v. Tuscon Unified Sch. Dist.*, 958 F.Supp. 1423 (D.Ariz. 1997) .................................... 6, 7

*Mrs. B. v. Milford Board of Education*, 103 F.3d 1114 (Conn. 1997) ............................................. 8

*Rebecca B. v. State of Hawaii*, 2006 WL 1737908 (D.Hawaii 2006); ......................................... 20

*Redding Elementary Sch. Dist. v. Goyne*, 2001 WL 34098658 (E.D.Cal. 2001) ........................... 9

*Robb v. Bethel Sch. Dist. #403*, 308 F.3d 1047 (9th Cir. 2002) .................................................. 15

*Starbuck v. City of San Francisco,* 556 F.2d 450, 457, n. 13 (9th Cir. 1977) ........................... 6, 8

*Tessa P. v. Gold Trail Union Sch. Dis*t., 56 Fed.Appx . 431 (9th Cir. 2003) ................................ 9

*Witte v. Clark County Sch. Dist.*, 197 F.3d 1271 (9th Cir. 1999) ........................................ 2, 3, 15

**STATE CASES**

*County of Los Angeles v. Joanne Smith*, 74 Cal.App.4th 500 (1999) .......................................... 12

*In re John K.*, 170 Cal.App.3d 783 (1985) ............................................................................ 4, 5, 13

**Fagen Friedman & Fulfrost, LLP**
6300 Wilshire Boulevard, Suite 1700
Los Angeles, California 90048
Main: 323-330-6300 • Fax: 323-330-6311

1

## FEDERAL STATUTES

2  20 U.S.C. §1412(a)....................................................................................3

3  20 U.S.C. §1412 (a)(10)(A) .................................................................9, 12

4  20 U.S.C. §1412(a)(10)(C) .................................................................9, 20

5  20 U.S.C. §1412(a)(10)(C)(iii) ..............................................................23

6  20 U.S.C. §1414(d)(3)(B)(i) ...................................................................13

7  20 U.S.C. §1415(e)(3) .............................................................................6

8  20 U.S.C. §1415(k)(1)(D)........................................................................13

9  20 U.S.C. §1415(l) .............................................................................2, 15

10

11

## FEDERAL REGULATIONS

12  34 C.F.R. §300.2(b) .................................................................................4

13  34 C.F.R. §300.344(a) (1999)................................................................18

14  34 C.F.R. §300.346(a)(2)(i) (1999) ......................................................13

15  34 C.F.R. §300.454(a)(1) (1999) .......................................................9, 12

16  34 C.F.R. §300.455 (1999) ......................................................................9

17  34 C.F.R. §300.455(b) (1999)................................................................12

18  34 C.F.R. §300.520(B)(1)(i) ..................................................................13

19  34 C.F.R. §300.540 ................................................................................19

20

## STATE STATUTES

21  Cal.Educ.Code §48645.2 ..........................................................................4

22  Cal.Educ.Code §56172 .......................................................................9, 11

23  Cal.Educ.Code §56174 .......................................................................9, 11

24  Cal.Educ.Code §56320(f) .......................................................................17

25  Cal.Educ.Code §56331 ...........................................................................17

26  Cal.Educ.Code §56341 ...........................................................................18

27  Cal.Educ.Code §56341.1(b)(1)...............................................................13

28

Cal.Educ.Code §56505(l) ................................................................................................ 14

Cal.Gov.Code §7576(b)(3) ............................................................................................. 17

Cal.Gov.Code §7576(b)(5) ............................................................................................. 17

**STATE REGULATIONS**

5 Cal.Code.Regs. §3001(aa) ........................................................................................... 13

5 Cal.Code.Regs. §3001(f) ............................................................................................. 13

5 Cal.Code.Regs. §3052(b) ............................................................................................. 13

Fagen Friedman & Fulfrost, LLP
6300 Wilshire Boulevard, Suite 1700
Los Angeles, California 90048
Main: 323-330-6300 • Fax: 323-330-6311

Fagen Friedman & Fulfrost, LLP
6300 Wilshire Boulevard, Suite 1700
Los Angeles, California 90048
Main: 323-330-6300 • Fax: 323-330-6311

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendant San Mateo Union High School District ("District") presents the following opposition to Plaintiffs' Motion for Summary Judgment ("Plaintiffs' Motion") in this action.  In their motion, Plaintiffs have failed to point this Court to any evidence in the administrative record or any pertinent legal authority which would require this Court to reverse or modify the decision by Administrative Law Judge ("ALJ") Suzanne Brown in the underlying administrative special education "due process" proceeding.  Thus, the District respectfully requests that the Court deny Plaintiffs' Motion and fully affirm the decision of ALJ Brown.

## I.    FROM MARCH 29, 2004 THROUGH JUNE, 2006, ERIC WAS A PRIVATELY PLACED STUDENT TO WHOM THE DISTRICT HAD NO OBLIGATION TO PROVIDE A SPECIAL EDUCATION PLACEMENT OR SERVICES.

Although not an issue in the underlying due process proceeding, Plaintiffs argue in their Motion that Eric was entitled to receive a FAPE from the District while he attended Ascent, CEDU, and Mount Batchelor Academy, because he was adjudicated a ward of the juvenile court.  Specifically, Plaintiffs argue that Eric's wardship status required the District to fund these placements.  First, because this issue was not adjudicated before the ALJ in the proceeding below, Plaintiffs have failed to exhaust their administrative remedies and cannot raise the issue for the first time in this civil action.  Second, and if the court allows Plaintiffs to raise this issue, Eric's status as a ward of the juvenile court plainly did not create any obligation for the District.  Rather, the District properly provided Eric with his special education and related services to Eric until his mother withdrew him from the District on March 29, 2004.  Upon Eric's withdrawal, he became a privately placed student with no further entitlement to a FAPE from the District.

### A.    Plaintiffs' Claim Regarding Eric's Status as a Ward of the Juvenile Court is Barred By The Failure to Exhaust Administrative Remedies.

Plaintiffs allege that because Eric was adjudicated a ward of the juvenile court, the District was obligated, and neglected to, provide him a FAPE.  However, Plaintiffs did not assert this issue at the due process hearing, did not present evidence on the issue and, accordingly, the issue was

Fagen Friedman & Fulfrost, LLP
6300 Wilshire Boulevard, Suite 1700
Los Angeles, California 90048
Main: 323-330-6300 • Fax: 323-330-6311

1  not decided by ALJ Brown.  Therefore, Plaintiffs should be barred from raising it for the first time

2  on appeal.

3      The IDEA requires that an administrative review process be pursued before seeking

4  judicial review.  20 U.S.C. §1415(l).  If a plaintiff fails to exhaust administrative remedies, the

5  federal court is without jurisdiction to hear the plaintiff's claim.  *Witte v. Clark County Sch. Dist.*,

6  197 F.3d 1271 (9th Cir. 1999).  Exhaustion of the administrative process allows for "full

7  exploration of technical educational issues, furthers development of a complete factual record, and

8  promotes judicial efficiency."  *Hoeft v. Tucson Unified Sch. Dist.*, 968 F.2d 1298, 1303 (9th Cir.

9  1992).  To achieve administrative exhaustion in the special education context, a party must raise

10  and litigate before the administrative law judge all matters allegedly giving rise to a denial of

11  FAPE.

12      Plaintiffs filed a due process complaint on July 20, 2006.  [AR 1-4.]  In that complaint,

13  Plaintiffs made no reference to Eric's arrest or subsequent wardship.  Rather, they simply allege

14  that "Eric attended a portion of his 10th grade at Hillsdale High School," that he "graduated from

15  high school in June, 2006" and that he attended "a private residential school in Naples,

16  Indiana…then transferred to CEDU in Running Springs, California [and] then transferred to

17  Mount Bachelor Academy."[1]  [AR 1, 3.]  The District challenged the sufficiency of the Complaint,

18  but ALJ Brown held that "[t]he Complaint contain[ed] a reasonably clear chronology of facts,

19  followed by articulation of the legal issues."  Specifically, she note[d] that "[t]he Complaint's

20  issues center[ed] around an individualized education program (IEP) dated May 1, 2003, and a

21  subsequent IEP dated November 13, 2003."  Clearly, the issue of Eric's criminal adjudication or

22  wardship status was not pled in the underlying case.

23      In preparation for hearing, Plaintiffs outlined five issues for hearing in their prehearing

24  conference statement.  [AR 56-58.]  None of these issues made reference to the juvenile court

25  proceedings or Eric's status as a ward of the juvenile court.  In fact, where references are made to

26  _____

27  [1] Eric's first private placement at Ascent was actually in Naples, *Idaho*.

28

1  Mount Bachelor, Plaintiffs referred to it as a private school and private placement. [AR 58:17-

2  59:1.] Similar references were used by Plaintiffs' in their Disclosure of Evidence and Witness

3  List. [AR 62-65.]

4      On December 12, 2006, ALJ Judith Kopec outlined the issues for hearing. [AR 70.]

5  Again, none of the issues placed Eric's status as a ward of the juvenile court at issue nor even

6  referenced such status. [AR 70.]

7      Finally, while Plaintiffs introduced Eric's court records at hearing, they produced no

8  credible witnesses, such as Eric's probation officer or other juvenile court personnel, to testify

9  regarding the criminal adjudication and the circumstances that ultimately led Eric to attend the

10 various private schools.

11     Plaintiffs' failure to properly raise or try the issue of Eric's wardship at the administrative

12 level results in a less than complete administrative record on the issue for this appeal. Moreover,

13 the District had no notice of the issue and did not specifically present evidence in defense of such

14 a claim. Finally, ALJ Brown did not consider any issue that was not established prior to hearing.

15 [AR 145.] Although Plaintiffs mentioned wardship in their closing brief, ALJ Brown did not

16 analyze or decide the issue of Eric's status as a ward of the juvenile court or its effect, if any, on

17 the District's obligation to provide a FAPE. [AR 145-160.] Plaintiffs have therefore, failed to

18 exhaust their administrative remedies on this issue and this Court lacks jurisdiction to determine it.

19 *Witte*, 197 F.3d at 1274.

20     **B.**    **Plaintiff's Adjudication as a Ward of the Juvenile Court Did Not Obligate the**

21           **District to Fund His Placements From March 29, 2004 through June, 2006.**

22     Should the Court consider the issue of wardship, the District will provide its response

23 based on the available record and applicable law. Specifically, the District does not contend that

24 Eric's status as a ward of the state disqualified him from receiving special education and related

25 services. However, that status will not obligate a school district to provide same.

26     The District acknowledges that disabled students are entitled to receive special education

27 and related services. 20 U.S.C. §1412(a). Further, a student's school district of residence

28 typically provides that special education and related services. However, other state and county

Fagen Friedman & Fulfrost, LLP
6300 Wilshire Boulevard, Suite 1700
Los Angeles, California 90048
Main: 323-330-6300 • Fax: 323-330-6311

Fagen Friedman & Fulfrost, LLP
6300 Wilshire Boulevard, Suite 1700
Los Angeles, California 90048
Main: 323-330-6300 • Fax: 323-330-6311

1  agencies may also be responsible for providing special education and related services.  *See* 34

2  C.F.R. §300.2(b) ["Each public agency in the state is responsible for ensuring that the rights and

3  protections under Part B of the [IDEA] are given to children with disabilities (1) referred to or

4  placed in private schools and facilities *by that public agency."*].  Specifically, students who are

5  incarcerated in juvenile court schools, will receive their special education and related services

6  from the county board of education, not the school district.  Cal. Educ. Code §48645.2.  Under

7  such circumstances, the school district is relieved of its duties under the IDEA during the period of

8  incarceration.

9      In this case, Eric did not face incarceration as sentenced, but was permitted to attend

10  several behavioral modification programs in lieu of juvenile hall.  [AR 998, 999, 1006, 1021]

11  Consequently, Eric's juvenile detention was stayed "pending further disposition on a time-waived

12  basis" because Eric was "to attend The Rocky Mountain Academy and Complete as directed at

13  parents' expense."  [AR 999-1000.]  As time passed and as Eric completed each of the private

14  programs, Eric's stayed time was vacated providing further evidence that the private placements

15  were an alternative to placement in juvenile hall.  [AR 1007, 1018.]  Much of the language in the

16  court documents indicates that placement in the private programs was permissive.[2]

17      Plaintiffs cite to several cases as purported authority for the position that Eric's juvenile

18  court wardship automatically obligated the District to pay for the private placements.  However,

19  Plaintiffs consistently fail to acknowledge the stark factual distinctions between those cases and

20  the facts of this action.  For example, in *In re John K.*, 170 Cal.App.3d 783 (1985), the student's

21  pre-incarceration placement was held to be inappropriate for failing to provide FAPE.  After

22  providing two appropriate IEPs, the student's behavior began to deteriorate.  The student

23

24  [2] For example, Eric's probation officer wrote to his parents that "[o]n March 4, 2004, the Court
    *allowed* your son to attend the Rocky Mountain Academy."  [AR 1015, emphasis added.]  The

25  juvenile court's order of that date indicates that it had honored the "request" for placement at
    CEDU and "[w]ith the courts *permission* the Minor will enroll in the Mount Bachelor Academy."

26  [AR 1006, emphasis added.]  Finally, the juvenile court noted that, "[a]s with all previous orders,
    the parents would be *allowed* to place the Minor at their expense."  [AR 1006, emphasis added.]

27

28

Fagen Friedman & Fulfrost, LLP
6300 Wilshire Boulevard, Suite 1700
Los Angeles, California 90048
Main: 323-330-6300 • Fax: 323-330-6311

1   demonstrated increased hostility, anger, rebelliousness, and was removed from school for slashing

2   a teacher's tires.  Subsequently, the student ran way from home on two occasions, was truant, was

3   charged with trespassing, malicious mischief, possession of marijuana, joyriding, and was made a

4   ward of the juvenile court.  The student was assessed and described as "self-destructive," with

5   "poor impulse control."  The student ultimately withdrew from the public school and began to

6   attend a private school.  *Id*. at 787.

7          The Court held that, because the student's current placement was "plainly inappropriate"

8   and the District took no action to assist him, despite its knowledge of the student's status in the

9   juvenile court system, the student's private placement was justified.  *Id*. 797.  The Court did not

10  fault the student's parents for privately placing the student prior to initiating due process

11  procedures because they had "obtained an order from the juvenile court referee finding [the

12  student's] [private placement] to be appropriate."  *Id*. at 798.  Therefore, the Court remanded for

13  the purpose of determining an appropriate reimbursement amount for the costs of the student's

14  placement.  *Id*.

15         In the present case, Eric was not exhibiting escalating "severe behavioral problems."  In

16  fact, the District provided FAPE by drafting a behavior support plan ("BSP") which improved

17  Eric's truancy, reduced his disciplinary actions and raised his grades.  During the 2002-03 school

18  year, Eric demonstrated inappropriate classroom behavior caused by anger, frustration, fear of

19  success and low self-esteem.  [AR 603:25-604:9.]  The IEP team then developed a BSP to address

20  these concerns and after implementation, Eric's behavior improved.  [AR 606:2-10; 1170.]  During

21  the 2003-04 school year, Eric no longer exhibited inappropriate classroom behavior.  [AR 604:3-9;

22  746:12-19; 747:18.]  Rather, Eric's behavioral problem during the 2003-04 school year was

23  truancy.  [AR 969.]  The IEP team developed a BSP to address Eric's truancy.  [AR 975.]  Prior to

24  Eric's withdrawal, the District was implementing the BSP and Eric's attendance and grades were

25  improving.  [AR 752:13-17; 975.]  Thus, unlike in *John K.*, the District did not ignore Eric's needs,

26  did not adopt inappropriate IEPs, and did not otherwise deny FAPE such that an alternative

27  placement was required.  *Id*. at 796.

28

Fagen Friedman & Fulfrost, LLP
6300 Wilshire Boulevard, Suite 1700
Los Angeles, California 90048
Main: 323-330-6300 • Fax: 323-330-6311

1    The District also convened IEP team meetings to address Ms. Rodriguez's concerns.  On

2   April 8, 2003, Ms. Rodriguez requested an IEP team meeting to discuss changing his class and

3   counselor.  [AR 1252.]  Eric's IEP team convened on May 1, 2003.  During the IEP team meeting,

4   Ms. Rodriguez shared her concern with school staff regarding Eric's placement and counselor.[3]

5   The IEP team addressed her concerns and, at the conclusion of the IEP team meeting, Ms.

6   Rodriguez withdrew her request for a change in placement.  [AR 952-961.]  Again, the District's

7   continuous and appropriate attention to Eric's needs distinguishes this case from *John K.*

8        Plaintiffs also improperly rely on *Magyar v. Tuscon Unified Sch. Dist.*, 958 F.Supp. 1423

9   (D.Ariz. 1997) which is distinguishable from the present case.[4]  The student in *Magyar* was

10   emotionally disabled.  *Id*. at 1428.  He experienced feelings of abandonment, his parents abused

11   alcohol, and he threatened to commit suicide.  *Id*. at 1444.  The student was suspended and later

12   expelled and arrested for bringing a knife to school, resulting in a disciplinary removal from

13   school for approximately two years.  *Id*. at 1428-1429.  During his removal, the student attended a

14   graffiti abatement program (a program with no educational component) and programs at Home

15   Quest and Vision Quest.[5]  The placement was arranged through and the costs underwritten by the

16   juvenile court system and the parent, who alleged that the district had a continuing obligation to

17   provide special education services during the juvenile court placement.  *Id*. at 1430.

18        The *Magyar* court held that the District had obligations to convene an IEP and continue

19   services when imposing a lengthy suspension on a student.  *Id.* at 1435 ("Federal law requires that

20   during the contested proceeding, the student must remain in the current educational program,"

21   *citing,* 20 U.S.C. §1415(e)(3)).  The *Maygar* court then asked "whether a school district must

22   provide the IDEA-qualified student educational services during the expulsion period."  *Id.* at 1435.

23   _____

24   [3] Ms. Rodriguez did not request residential placement at this IEP team meeting.

25   [4] This District Court of Arizona case also no precedential value in this case.  "The doctrine of
      *stare decisis* does not compel one district court judge to follow the decision of another."  *Starbuck*
26   *v. City of San Francisco,* 556 F.2d 450, 457, n. 13 (9th Cir. 1977).

27   [5] Home Quest is a private non-profit alternative day school.  Vision Quest is a 24 hour residential
      program.  *Magyar*, 958 F.Supp. at 1430.

28

1    The Court held that the district's obligation to provide FAPE was not extinguished with expulsion.

2    Specifically, "the Court [found] that *based on facts unique to this case* and the Supreme Court's

3    guidance in *Honig*, that all handicapped students are entitled to individualized educational services

4    when they are long-term suspended or expelled from the regular school setting *in the State of*

5    *Arizona*." *Id.* at 1437 [emphasis added].  Finally, the Court concluded that the appropriate

6    services were not being provided.  *Id.* at 1443.  Thus, based on the various IDEA violations, the

7    court ordered the school district to provide compensatory education and prospective special

8    education services.  *Id.* at 1446.  The court did not order that the District must pay for the post-

9    suspension placements because the student was a ward of the court – the central assertion for

10    which Plaintiffs proffered this opinion.

11         The present case is wholly distinguishable from *Maygar*.  Eric qualified for special

12    education and related services under the eligibility category of specific learning disabled and

13    speech and language impaired.  [AR 240:9; 241:11; 11268.]  Eric did not demonstrate problems of

14    severe emotional disturbance.  [AR 814:23-815:12.]  Eric's behavioral needs were limited to

15    anger, frustration, fear of success, low self-esteem, and truancy.  [AR 603:24-604:9; 969;1170.]

16    Eric was suspended from school; however, for only a total of five days in ninth grade and nine and

17    one half days in tenth grade.  [AR 1234-1239.]  Eric was not expelled from school.  There was no

18    determination by the District as to whether discipline was the result of his disability.

19         The *Maygar* court's analysis of whether a district owes a continuing obligation to provide

20    special education services when a special education student is expelled for reasons other than

21    those that are a manifestation of his disability is totally inapposite here.  Further, as discussed in

22    section II. C. below, and unlike the facts in *Maygar,* the District had no knowledge of Eric's arrest

23    or conviction and was told by Ms. Rodriguez that Eric was being privately placed.  Thus, there is

24    nothing in *Maygar* which creates an affirmative obligation on the District to pay for Eric's private

25    placements arising out of his arrangements with the juvenile court.

26    / / /

27    / / /

28    / / /

Fagen Friedman & Fulfrost, LLP
6300 Wilshire Boulevard, Suite 1700
Los Angeles, California 90048
Main: 323-330-6300 • Fax: 323-330-6311

Fagen Friedman & Fulfrost, LLP
6300 Wilshire Boulevard, Suite 1700
Los Angeles, California 90048
Main: 323-330-6300 • Fax: 323-330-6311

1    Finally, Plaintiffs improperly rely on *Mrs. B. v. Milford Board of Education*, 103 F.3d

2   1114 (Conn. 1997) to assert that the District should reimburse Ms. Rodriguez for Eric's

3   placement.[6]  In *Mrs. B.*, the student suffered from poor self-image, had difficulty interacting with

4   others, significant fears and anxiety, and "would become overwhelmed by her surroundings,

5   leading to regressive behavior and inability to problem solve effectively or to think clearly and

6   logically."  *Id*. at 1117.  The student failed to make progress in the public school leading to

7   placement in a residential setting by the Department of Child and Youth Services.  *Id*.  The court

8   stated that "if institutionalization is required due to a child's emotional problems, and the child's

9   emotional problems prevent the child from making meaningful educational progress, the Act

10  requires the pay for the cost of the placement."  *Id*. at 1122.  The court held that residential

11  placement was required for the student to make meaningful progress.  *Id*. at 1121.  In no manner,

12  did this case involve a juvenile court adjudication and it appears that Plaintiffs offer it merely for

13  the assertion that when a school district is required to pay for a residential placement, it must pay

14  for all aspects of the placement, including noneducational components.  (Plaintiffs' Motion at

15  19:11-20.)

16    In this case, there is no evidence that the District failed Eric by refusing to provide a

17  residential placement when one was warranted.  Eric's emotional and behavioral needs were

18  *significantly* different than those of the student in *Mrs. B*.  During the 2002-03 school year, Eric

19  demonstrated inappropriate classroom behavior.  [AR 603:25-604:9.]  Eric then began to exhibit

20  problems with truancy.  [AR 969.]  He did not exhibit signs of an emotional disturbance.  [AR

21  814:23-815:12.]  Thus, unlike the student in *Mrs. B.*, Eric was able to be educated at the District

22  school and never required a residential placement as a result of his disabilities.

23  / / /

24  / / /

25

26  [6] Under the doctrine of *stare decisis, this* District Court of Connecticut case also has no
27  precedential value in this case.  *Starbuck v. City of San Francisco,* 556 F.2d 450, 457, n. 13 (9th
    Cir. 1977).

28

The question presented by the first section of Plaintiffs' Motion is whether the District was obligated to pay for the placements at Ascent, CEDU and Mount Bachelor, or otherwise provide Eric with a FAPE during this time period, because the placements were worked out between Eric and the Court and reflected in the Court's order as an alternative to incarceration. Plaintiffs have cited to no relevant authority which answers that question in the affirmative. Rather, the placements were made by Eric's mother (apparently to keep her son from being incarcerated), with no notice to the District, consistent with a unilateral private placement.

### C.    The District Was Not Obligated to Provide FAPE from March 29, 2004 through June, 2006 Due to the Private Placement.

School districts are not obligated to fund private placements when the school district is making FAPE available to the student and the parent elects to place the child in a private school. 20 U.S.C. §1412(a)(10)(C); Cal. Educ. Code §56174; *see also, Tessa P. v. Gold Trail Union Sch. Dist.*, 56 Fed.Appx. 431 (9th Cir. 2003); *Redding Elementary Sch. Dist. v. Goyne*, 2001 WL 34098658 (E.D.Cal.). These privately placed students have "no individual right to special education." 34 C.F.R. §300.454(a)(1) (1999). "No private school child with a disability has an individual right to receive some or all of the special educational and related services that the child would receive if enrolled in a public school." *Id.*; *See* 20 U.S.C. §1412 (a)(10)(A); Cal.Educ. Code §§56172, 56174. Further, "private school students with disabilities may receive a different amount of services than children with disabilities in public schools. No private school child with a disability is entitled to any service or to any amount of a service the child would receive if enrolled in a public school." 34 C.F.R. §300.455 (1999).

As discussed fully in section II, *infra*, the District provided Eric with a FAPE during his attendance in the District and until his withdrawal on March 29, 2004, thereby satisfying its obligations under the IDEA. [AR 989.] Moreover, Ms. Rodriguez simply advised the District that she was sending Eric to the Ascent behavioral school without mentioning his arrest or adjudication and without stating that the withdrawal was due to the District's failure to deliver a FAPE. Thus, it was reasonable for the District to conclude that this was simply a private placement.

Fagen Friedman & Fulfrost, LLP
6300 Wilshire Boulevard, Suite 1700
Los Angeles, California 90048
Main: 323-330-6300 • Fax: 323-330-6311

Fagen Friedman & Fulfrost, LLP
6300 Wilshire Boulevard, Suite 1700
Los Angeles, California 90048
Main: 323-330-6300 • Fax: 323-330-6311

1   Plaintiffs contend that the District did, in fact, have knowledge and notice of Eric's arrest,

2   conviction, sentencing and terms of his probation and, therefore, should have continued to provide

3   services accordingly.  However, Plaintiffs failed to present any reliable evidence at hearing,

4   beyond Mrs. Rodriguez' speculation, to support this assertion.  Rather, the evidence showed that,

5   Ms. Rodriguez telephoned Eric's teacher, Jessica Hahn, on March 22, 2004 and simply informed

6   her that Eric would no longer be attending District schools and would be transferring to a

7   residential placement.  [AR 837:3-7; 1250.]   Notably absent from Ms. Rodriguez' testimony was

8   any claim that she had communicated to Ms. Hahn that Eric had been made a ward of the juvenile

9   court or that Eric's placement was a result of a court order.  Rather, Ms. Rodriguez testified that

10  she advised Ms. Hahn that "[her] therapist recommended a school like CEDU for Eric – actually it

11  was Rocky Mountain Academy."[7]  [AR 262:8-15.]  Additionally, she did not ask for Eric's IEP,

12  did not ask that the District become involved in the placement or make payment or that the District

13  provide its own residential behavior program.  [AR 324:20-325:18.]

14  Ms. Rodriguez testimony was then corroborated by Ms. Hahn who testified that Eric's

15  mother called to advise that Eric was going to a residential placement but did not specify why.

16  [AR 820:2-821:17.] At hearing, Ms. Rodriguez also confirmed that the subsequent decisions

17  regarding Eric's change in placement to CEDU and then Mount Bachelor Academy were reached

18  through consultation with the court probation officer and not communicated to the District.  [AR

19  328:8-17, 329:14-330:18; 350:22-352:9]

20  At hearing, Plaintiffs pointed to Eric's November 2003 IEP, and the fact that a check mark

21  appears showing assignment to probation officer Glen Bautista, as "evidence" that the District

22  knew of Eric's juvenile court proceedings.  [AR 251:19-252:1, 963 (Exhibit 2 at p. 14).]

23  However, this assertion is nothing more than speculation and was clearly contradicted by the

24  testimony of District personnel.  Specifically, Ms. Hahn testified that she had referred Eric to Mr.

25

26  [7] Ms. Rodriguez testified that she had met with a private therapist, Ed Waldra, after hearing him
27  speak at a seminar on helping your child succeed.  She testified that Mr. Waldra recommended
    that Eric attend Rocky Mountain Academy in November or December 2003.  [AR 345:1-346:21]

28

1  Bautista as his "truancy on-site probation officer" and had checked the box on his November 2003

2  IEP to indicate this assignment." [AR 746:20-747:8; 1268.]  The District's special education

3  director, Marvin Meyers then testified that Mr. Bautista's function was *not* as Eric's *court*

4  probation officer.  Rather, his primary function was "to provide support for school counselors in

5  regards to truancy issues," monitor his truancy and communicate with his special education

6  teacher.  [AR 459:165-460:19; AR 461:5-7, 461:19-462:8, 488:5-14.]  Thus, he would not have

7  been in communication with the juvenile court about those proceedings and Plaintiffs provided no

8  evidence to establish such communication.[8]

9      Plaintiffs also pointed to Eric's high school transcript which noted his transfer to a

10  "behavioral school in Idaho" in March 2004.  [AR 261:6-262:7, 989 (Exhibit 4).]  Again, this

11  document does not provide any pertinent information as to when or how the District received this

12  information and does not contradict the testimony that Ms. Rodriguez simply called Ms. Hahn in

13  March 2004 to advise that Eric was changing to a non-District school.

14      Finally, Plaintiffs criticize Mr. Marvin's testimony that the District's obligations ended

15  upon his private placement.  [AR 477:19-24; 478:11-15.]  However, this was not based on the fact

16  that Eric was a ward of the juvenile court, as Plaintiffs suggest.  Rather, it was reasonably based

17  on the  information available at the time that: (1) Eric was offered a FAPE, (2) the District was

18  implementing the IEP, and (3) Ms. Rodriguez withdrew Eric without further explanation.  [AR

19  821:15-17; 970.]  Thus, the District properly treated Eric as a privately placed student.

20      Upon Eric's withdrawal from the District, he became a privately placed student with no

21  individual entitlement to special education and related services.  *See* 34 C.F.R. §300.454(a)(1)

22  (1999); 20 U.S.C. §1412(a)(10)(A); Cal. Educ. Code §56172, 56174.  Although Plaintiffs argue

23  that "a child subject to an individualized education program is entitled to an appropriate public

24  education," Eric was no longer entitled to the IEP after his withdrawal as a matter of law.

25  ───────────────

26  [8] Ms. Rodriguez testified as to her "belief" that Mr. Bautista would have received a copy of the
   Court's orders.  [AR 267:12-15]  However, she provided no documentation to support this and no

27  testimony by either Mr. Bautista or Eric's court probation officer, Patricia Pritchard, to support
   this assertion.  [AR 333:24-334:18 (identifying Ms. Pritchard)]

28

Fagen Friedman & Fulfrost, LLP
6300 Wilshire Boulevard, Suite 1700
Los Angeles, California 90048
Main: 323-330-6300 • Fax: 323-330-6311

1  [Plaintiffs' Motion 17:1-8, *citing County of Los Angeles v. Joanne Smith*, 74 Cal.App.4th 500, 518

2  (1999); 34 C.F.R. §300.455(b) (1999).] *See* 34 C.F.R. §300.454(a)(1) (1999).  Therefore, based

3  on the information available to the District at the time of Eric's withdrawal, the District was no

4  longer obligated to provide a FAPE.  *See* 20 U.S.C. §1412(a)(10(A); 34 C.F.R. §300.454(a)(1)

5  (1999).  Plaintiffs presented no testimony or other evidence which would indicate that the District

6  should have viewed Eric's departure as anything other than a voluntary placement by his mother

7  to a private institution.

8

9  II.    **FROM JULY 19, 2003 UNTIL HIS PLACEMENT OUTSIDE THE DISTRICT, THE**

10       **DISTRICT PROVIDED ERIC WITH  A FREE AND APPROPRIATE PUBLIC**

11       **EDUCATION**

12       Following the due process hearing at which the parties were given ample opportunity to

13  present testimony and documentary evidence, ALJ Brown correctly determined that the District

14  provided Eric with a FAPE from July 19, 2003 until such time as he left the District to attend the

15  Ascent program in Idaho.  As outlined in the District's Motion for Summary Judgment ("District's

16  Motion"), the testimony and evidence supported the ALJ's findings that the District (1) did not fail

17  to assess Eric's behavioral needs, (2) did not fail to meet Eric's unique behavioral and mental

18  health needs, (3) did not fail to include a school psychologist at the November 13, 2003 IEP, (4)

19  did not fail to assess Eric in the areas of behavior, speech and language, and academics, (5) did not

20  fail to provide adequate levels of performance in his November 13, 2003 IEP, (6) did not fail to

21  include adequate goals in his November 13, 2003 IEP and (7) did not fail to meet his unique

22  speech and language needs.  The District will not repeat those arguments here but will specifically

23  address the points made in Plaintiffs' motion on these issues, as well as several new issues of

24  FAPE which are being injected into this action for the first time.

25       A.    **The District Did Not Fail to Assess Eric's Behavioral Needs.**

26       As discussed in the District's Motion, the District employed appropriate "strategies,

27  including positive behavioral interventions, strategies, and supports to address [Eric's] behavior"

28  and was not required to perform either a Functional Behavior Assessment under the IDEA or a

Fagen Friedman & Fulfrost, LLP
6300 Wilshire Boulevard, Suite 1700
Los Angeles, California 90048
Main: 323-330-6300 • Fax: 323-330-6311

1   Functional Analysis Assessment ("FAA") under California law.  Specifically, the ALJ concluded

2   that the BSP developed and implemented for Eric was appropriate, effective, and designed to meet

3   Eric's unique needs.  (District's Motion at 13:17-16:18, *citing* 20 U.S.C. §1414(d)(3)(B)(i); 20

4   U.S.C. §1415(k)(1)(D); 34 C.F.R. §300.346(a)(2)(i) (1999); 34 C.F.R §300.520(B)(1)(i);

5   Cal.Educ.Code §56341.1(b)(1); 5 Cal.Code.Regs. §3001(aa) and (f); 5 Cal.Code.Regs. §3052(b).)

6   Plaintiffs adduced no evidence at the due process hearing to demonstrate that the District was

7   required to provide more than it did.

8         In their Statement of Facts, Plaintiffs note that Eric's disciplinary records contain the

9   comment "BIP needed."[9]  (Plaintiffs' Motion at 10:15-16, *citing* AR 1395.)  However, Plaintiff did

10  not offer testimony to give any significance to this entry and the ALJ correctly concluded that

11  there was no evidence that Eric's behavior was self-injurious, assaultive, the cause of serious

12  property damage or otherwise so severe, pervasive and maladaptive that the behavioral approaches

13  found in the IEP were ineffective, as required for an FAA and BIP.  Cal.Code.Regs., tit. 5,

14  §3001(aa) and (f); [AR 149 (¶17); 662:22-663:2].  Plaintiffs also cite generally to disruptive

15  behavior in their motion but again presented no evidence to show that the District failed to take

16  appropriate action.  Rather, as acknowledged by Plaintiffs, Eric's teacher reported all of his

17  negative behaviors to the IEP team as part of his May 1, 2003 IEP.  (Plaintiffs' Motion at 10:22-

18  11:3, 12:5-15.)  Thus, the information was considered by the IEP team in developing Eric's BSP

19  which, the evidence showed, improved the behaviors.

20        In their motion, Plaintiffs again cite to *In re John K.,* for the proposition that "a district

21  cannot simply do nothing. . . ."  (Plaintiffs' Motion at 21:25.)  Yet, the assertion that the District

22  did nothing is disingenuous in light of the evidence regarding the development of his BSP, the

23  discussion of his truancy at his IEP(s), the implementation of the BSP strategies and, finally, the

24  fact that those strategies were resulting in improved attendance.  (See, Districts' Motion at 5:26-

25  6:14, 8:7-20, 8:27-9:2, *citing* AR 601:17-20; 601:25-602:12; 603:9-17; 603:25-604:9; 604:15-

26  _____

27  [9] A BIP, or behavior intervention plan, is the plan developed following the functional analysis
    assessment under California law.  Cal.Code.Regs., tit. 5, §3001(aa) and (f).

28

Fagen Friedman & Fulfrost, LLP
6300 Wilshire Boulevard, Suite 1700
Los Angeles, California 90048
Main: 323-330-6300 • Fax: 323-330-6311

Fagen Friedman & Fulfrost, LLP
6300 Wilshire Boulevard, Suite 1700
Los Angeles, California 90048
Main: 323-330-6300 • Fax: 323-330-6311

1    605:3; 605:11-13; 606:2-10; 616:2-3; 652:20-22; 746:12-19; 747:18-23; 748:20; 748:24-

2    25;750:12-17; 750:22-24; 751:6-10; 751:22-752:2; 752:6-8; 752:13-17; 863:24-25; 975; 977-979;

3    989; 1165; 1169-1170; 1242.)

4        Having cited to no evidence that the District, in fact, failed to assess or otherwise address

5    Eric's behavior, this Court should affirm the ALJ's well-reasoned and supported conclusion that

6    the District did not deny Eric a FAPE by failing to assess in the area of behavior.  [AR 158 (¶15),

7    *citing* AR 148-149 (¶¶16-17) and AR 155-157 (¶¶3, 9 and 12).]

8        **B.    Plaintiffs' Claim Regarding Eric's November 12, 2002 IEP is Barred Both by**

9            **the Applicable Statute of Limitations and Their Failure to Their Exhaust**

10           **Administrative Remedies.**

11       Prior to October 9, 2006, Education Code section 56505(l) set the statute of limitations for

12   IDEA cases as follows:

13           Any request for a due process hearing arising under subdivision (a)
             of Section 56501 shall be filed within ***three years*** from the date the
14           party initiating the request knew or had reason to know of the facts
             underlying the basis for the request.

15

16   [Emphasis added.]

17   After October 9, 2006, the section was revised to provide for a two year statute of limitations.

18   Cal.Educ.Code §56505(l), added by STATS.2005, c.653 (A.B. 166), §43.5 eff. Oct. 7, 2005,

19   operative Oct. 9, 2006.)  Because Plaintiffs' initial request for due process was filed on July 20,

20   2006, the three-year statute of limitations applied and Plaintiffs were barred from asserting any

21   claims arising out of conduct occurring prior to July 20, 2003.[10]

22       In Plaintiffs' Motion, in the heading for this issue, they make the parenthetical comment

23   that the November 2002 IEP was operative during the statutory period, presumably saying that the

24   statute of limitations will not bar this claim.  However, the crux of this claim is not about the

25   "operation" of the IEP through the actions of the District.  Rather, the claim is clearly about the

26   _____

27   [10] ALJ Brown actually used the date of July 19, 2003 in setting the issues for hearing.  [AR 56-
     58.]

28

1    *drafting* of the IEP which took place in November 12, 2002, outside of the statutory period. Thus,

2    Plaintiffs have presented no argument to defeat the statute of limitations bar.

3        Further, Plaintiffs may not raise this issue as it was not adjudicated by the ALJ in the due

4    process proceeding. In the Ninth Circuit, the exhaustion requirement under IDEA is jurisdictional,

5    *i.e.,* without administrative exhaustion, the federal courts may not hear or rule on an IDEA claim.

6    *See Robb v. Bethel Sch. Dist. #403*, 308 F.3d 1047, 1050 (9th Cir. 2002) (failure to exhaust

7    administrative remedies is subject matter jurisdictional, warranting complaint dismissal); *Witte*,

8    197 F.3d at 1274*; Dreher v. Amphitheater Unified Sch. Dist.*, 22 F.3d 228, 231 (9th Cir. 1994) (in

9    *dicta*, discussing failure to exhaust IDEA administrative remedies as depriving district court of

10   subject matter jurisdiction). Stated another way, Plaintiffs must exhaust their administrative

11   remedies in the form of a due process hearing before bringing a civil action to obtain relief that is

12   also available under the IDEA. 20 U.S.C. §1415(l). Hence, exhaustion is a prerequisite to the

13   Court's jurisdiction over most IDEA cases.

14       The ten issues and sub-issues which were considered are plainly set forth in the ALJ's

15   written opinion. [AR 144-161**.**] Clearly, the ALJ did not consider whether Eric's November 2002

16   IEP was complete and *only* the content of the November 2003 IEP was at issue. Thus, Plaintiffs

17   failed to exhaust administrative remedies on any issue relative to Eric's November 2002 IEP and

18   cannot raise such a claim for the first time in the context of this civil action.

19       C.    **Plaintiffs' Claim Regarding Eric's May 2003 IEP is Barred Both by the**

20             **Applicable Statute of Limitations and Their Failure to Their Exhaust**

21             **Administrative Remedies.**

22       As discussed in the previous section, a claim concerning events prior to July 20, 2003 is

23   barred by the applicable statute of limitations. Thus, the District contends that Plaintiffs' claim

24   that the May 2003 IEP team did not include all necessary or appropriate team members would be

25   barred.

26       Moreover, as discussed with the claim surrounding the November 2002 IEP, the ALJ did

27   not adjudicate this issue and, therefore, Plaintiffs are barred from raising the claim in the context

28   of this civil action as their administrative remedies were not appropriately exhausted.

Fagen Friedman & Fulfrost, LLP
6300 Wilshire Boulevard, Suite 1700
Los Angeles, California 90048
Main: 323-330-6300 • Fax: 323-330-6311

D.    **The District Adequately Met Eric's Needs in the Area of Speech and Language.**

It is undisputed that the District modified Eric's speech and language services from a weekly scheduled session to a consultation model where Eric could access the services when he attended school. [AR 690:15-691:18; 710:23-711:6.] Further, as set forth in the District's Motion, the ALJ properly concluded that this met the requirement under the seminal *Rowley* decision that services be designed to meet a student's unique needs which are reasonably calculated to enable the child to receive benefit from his education. *Board of Educ. of the Hendrick Hudson Central Sch. Dist. v. Rowley ("Rowley:")*, 458 U.S. 176, 206-207, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982). (*See,* District's Motion at 26:1-27:17, *citing,* AR 3; 108:18-26; 153 (¶¶31-32); 240:9; 680:15-681:15; 685:18-19; 686:17-20; 687:6-9; 689: 4-14; 690: 15-21; 691:5-20; 692:2-693:1; 695:12-21; 697:1-699:30; 970; 974; 1165.)

Despite being assigned to weekly speech therapy, Eric had deliberately cut all but two sessions during the 2003-2004 school year as of the therapist's November 6, 2003 report. [AR 689:2-18; 1279.] The team discussed changing this perceived power struggle in an effort to encourage Eric to seek out the therapy, work on his own goals and reengage in a productive way. "Otherwise, [his speech therapist] felt like it was a totally unproductive, unworkable therapeutic plan." [AR 690:14-691:20.] Importantly, Mrs. Rodriguez raised no objection to this approach. [AR 691:21-692:4; 1297.]

As the ALJ concluded, "[g]iven Student's frequent absences from school, being pulled out of academic classes to attend speech therapy no longer facilitated his overall educational needs. Moreover, because Student already knew from years of speech therapy what strategies to use to avoid stuttering, this 'therapeutic pause' in direct speech therapy would only minimally impact his ability to improve his speech fluency." [AR 153 (¶32).] Finally, ALJ found Eric's therapist, Ms. Fox, to be a "credible and persuasive" witness and therefore concluded that the change in services did not result in a denial of FAPE. [AR 159 (¶21), *citing,* AR 153 (¶¶31-32); 155-157 (¶¶ 3, 5-8 and 14).] This thorough and careful analysis of the issue and its resulting conclusion should be given deference by this Court.

Fagen Friedman & Fulfrost, LLP
6300 Wilshire Boulevard, Suite 1700
Los Angeles, California 90048
Main: 323-330-6300 • Fax: 323-330-6311

Fagen Friedman & Fulfrost, LLP
6300 Wilshire Boulevard, Suite 1700
Los Angeles, California 90048
Main: 323-330-6300 • Fax: 323-330-6311

1   **E.    The District Did Not Deny Eric a FAPE by Failing to Provide Mental-Health**

2   **Services.**

3       Plaintiffs claim that the IEP team had an obligation to refer Eric for County Mental Health

4   Services, yet fail to point to any specific evidence which supports this assertion.  (Plaintiffs'

5   Motion at 25:12-15.)  As set forth in the District's Motion, the ALJ correctly concluded that the

6   sole remaining behavior issue – truancy – did not require this referral.  (*See,* District's Motion at

7   16:19-18:25, *citing,* AR 150 (¶19 and n. 7); 151 (¶22); 106:26-107:4, 375:18-376:11; 378:18-

8   379:4; 382:9-15; 394-25-395:12; 530:10-531:4; 532:1-11; 544:8-12; 553:21-554:14; 605:8-10;

9   615:25-616:1; 750:12-17; 750:22-24; 751:6-10; 751:23-752:17; 760:25-763:2; 789:1-12; 798:1-6;

10  965; 969; 971-973; 975; 989.)

11      Plaintiff also argues that the District "failed to follow its own plan" by not referring to

12  mental health upon failure of the BSP's.  However, as the District's witnesses testified, the BSP's

13  were not failing and were improved Eric's attendance, lessened the frequency of disciplinary

14  referrals, and raised his failing grades.  [AR 603:23-604:2; 606:2-10; 610:23-611:6; 615:16-616:3;

15  617:1-618:6; 654:24-655:23; 743:9-15; 752:9-24; 814:7-22.]

16      Plaintiff has not and cannot cite to evidence in the record which shows the District had an

17  obligation to refer to mental health due to an emotional or behavioral characteristic which was

18  impeding educational benefit, which could not be addressed by school site interventions, and

19  which required outside mental health treatment.  Cal.Educ.Code §§56320(f), 56331;

20  Cal.Gov.Code §7576(b)(3) and (5).  As the ALJ concluded, "[b]y itself, truancy is not associated

21  with a condition requiring mental health services." [AR 151 (¶22).]  Rather, the services, however

22  provided, must focus on improving attendance above all else.  [AR 149-150 (¶18) ("a program for

23  a truant special education student generally should include at least one aspect designed to address

24  attendance"), *citing Board of Educ. for Oak Park and River Forest High Sch. Dist. v. Illinois State*

25  *Bd. Of Educ. and Kelly E.,* 21 F.Supp.2d 862, 877 (N.D. Ill. 1998)].

26      Finally, as ALJ Brown noted, even if Eric may have benefited from outside counseling,

27  this cannot be considered in a FAPE analysis.  Rather, whether or not a student is exhibiting

28  behaviors that *require* a referral is the sole issue to be considered.  [AR 151 (¶22).]

Fagen Friedman & Fulfrost, LLP
6300 Wilshire Boulevard, Suite 1700
Los Angeles, California  90048
Main: 323-330-6300 • Fax: 323-330-6311

F.    **The District Did Not Deny Eric a FAPE by Failing to Have All Necessary Attendees at Eric's IEPs.**

As discussed in sections II.B. and II.C. above, this Court cannot consider claims concerning the November 2002 or May 2003 IEPs as these meetings took place beyond the statute of limitations periods and, accordingly, were not adjudicated by the ALJ at the due process hearing.  Because the claims are time barred and were not heard below, this Court lacks jurisdiction to hear them at this time.

With respect to the November 2003 IEP, the District's Motion sets forth that it was not required to include a school psychologist at the team meeting.  (District's Motion at 19:1-20:15.) Specifically, the District cited to the following regulation which lists the required team members:

The public agency shall ensure that the IEP team for each child with a disability includes--

(1) The parents of the child;

(2) At least one regular education teacher of the child (if the child is, or may be, participating in the regular education environment);

(3) At least one special education teacher of the child, or if appropriate, at least one special education provider of the child;

(4) A representative of the public agency who--

(i) Is qualified to provide, or supervise the provision of, specially designed instruction to meet the unique needs of children with disabilities;

(ii) Is knowledgeable about the general curriculum; and

(iii) Is knowledgeable about the availability of resources of the public agency;

(5) An individual who can interpret the instructional implications of evaluation results, who may be a member of the team described herein;

(6) At the discretion of the parent or the agency, other individuals who have knowledge or special expertise regarding the child, including related services personnel as appropriate; and

(7) If appropriate, the child.

34 C.F.R. §300.344(a) (1999); *see also,* Cal.Educ.Code §56341[containing the same list]. Importantly, a school psychologist is only *required* when the student is being evaluated to determine if he or she is eligible to receive special education for a specific learning disability.  34

1    C.F.R. §300.540.  As this was not a consideration for Eric, the ALJ correctly determined that "the

2    absence of any school psychologist at the November 2003 IEP meeting was not a procedural

3    violation" and, therefore, did not result in a denial of FAPE.  [AR 151 (¶¶24-25).]

4         **G.     The District Did Not Deny Eric a FAPE by Failing to Ascertain His Present**

5              **Levels of Functioning as of the November 2003 IEP.[11]**

6         As set forth in the District's Motion. the November 13, 2003 IEP team explicitly outlined

7    Eric's present levels of performance based on all information available.  (See, District's Motion at

8    22:15-24:13.)  Typically, present levels are established through a discussion of "baseline data"

9    which are ascertained through assessment data and observation of the student in the classroom.

10   *French v. Omaha Public Schools,* 766 F.Supp. 765, 794-796 (Neb. 1991); *B.B. v. Hawaii Dept. of*

11   *Educ.,* 483 F.Supp. 1042, 1047 (D. Hawai'i 2006).  For Eric, this information was set forth in

12   several parts of the IEP, including the Assessment Information/Present Level of Performance

13   Report prepared by his special education teacher Ms. Hahn.  [AR 1271, 1272 and 1274.]

14        In their Motion, Plaintiffs fail to assert how the District could have provided present levels

15   that were any more detailed than what was included.  The only specific evidence cited is Ms.

16   Hahn's comment that Eric had not been tested.  (Plaintiffs' Motion at 28:7-8.) However, Plaintiffs

17   ignored the significant content, on which the ALJ relied, concerning his excessive truancy.  Such

18   truancy would, by its nature, limit the teachers' observation of classroom performance.  Plaintiffs

19   also fail to note the IEPs comments regarding Eric's failing GPA of .923 which, in and of itself, is

20   a measure of performance.

21        Importantly, ALJ Brown noted that, despite the availability of extensive data concerning

22   Eric's day to day performance, the IEP team was very familiar with Eric and his needs and

23   therefore able to make "knowledgeable recommendations about his proposed program."  [AR 152

24   (¶27); 616:22;  695:12-21;  743:11;  744:25-745:4;  745:11-22;  974.]  Because, ultimately, the

25

26   [11] Within this section, Plaintiffs also make the conclusory statement that Eric did not receive
     adequate goals in the IEP.  [Plaintiffs' Motion at 28:19-20.]  Plaintiffs have not fully briefed this
27   issue.  However, because it was an issue in due process and to the extent the Court is evaluating
     the issue, the District would refer the Court to its discussion at 24:14-25:28 in its Motion.

28

Fagen Friedman & Fulfrost, LLP
6300 Wilshire Boulevard, Suite 1700
Los Angeles, California  90048
Main: 323-330-6300 • Fax: 323-330-6311

1  purpose of the IEP team meeting is to set goals to provide the student with the benefit of his

2  education, the ALJ assessed the credibility of Eric's teachers and concluded that the IEP did not

3  deny Eric a FAPE.  Under *Rowley,* whether or not a specific detail is included in an IEP, the

4  absence of which may be a procedural or technical violation, is less important than whether that

5  omission denied the student the benefit of his education.  *Rowley*, 458 U.S. at 207-208.  In this

6  case, given that Eric's performance in school was most greatly affected by his truancy, the ALJ

7  concluded that the present levels as written led to adequate goals that did not deprive Eric of

8  educational benefit and, therefore, did not deny Eric a FAPE.  [AR 152 (¶27).]

9

10  **III.    PLAINTIFFS ARE NOT ENTITLED TO REIMBURSEMENT FOR ERIC'S**

11  **PRIVATE SCHOOL PLACEMENT AND RELATED TRANSPORTATION COSTS**

12  **FROM MARCH 2004 TO JUNE 2006**

13        As set forth in detail in the District's Motion, ALJ Brown properly denied Plaintiffs

14  reimbursement request.  This was based on Plaintiffs' failure to demonstrate that (1) the District

15  had denied Eric a FAPE, (2) Eric's private placements were appropriate, and (3) proper notice was

16  given to the District prior to Eric's withdrawal.  (District's Motion at 27:19-, *citing Burlington v.*

17  *Dep't of Educ.,* 471 U.S. 359, 373-374, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985); *Florence County*

18  *Sch. Dist. v. Carter ("Carter"),* 510 U.S. 7, 114 S.Ct. 361, 126 L.Ed.2d 284 (1993); *Clovis*

19  *Unified Sch. Dist. v. Office of Admin. Hearings*, 903 F.2d 635, 643, 646 (9th Cir. 1990); *Rebecca*

20  *B. v. State of Hawaii*, 2006 WL 1737908 (D.Hawaii 2006); *Berger v. Medina City Sch. Dist.*, 348

21  F.3d 513, 524 (6th Cir. 2003); 20 U.S.C. §1412(a)(10)(C); [AR 157-158 (¶15-16), 159 (¶22).]

22        A.    <u>**Plaintiffs Failed to Demonstrate that the District Denied Eric a FAPE.**</u>

23        To receive reimbursement for private school placement, Plaintiffs must demonstrate that

24  the District denied Eric a FAPE.  20 U.S.C. §1412(a)(10)(C).  As discussed in the District's

25  Motion and above in sections I and II, the District provided Eric a FAPE during the time he

26  attended the District's school.  The District developed a reasonably calculated program to enable

27  Eric to benefit from his education.  The District conducted assessments, convened IEP team

28  meetings, developed IEPs and BSPs, invited Ms. Rodriguez' participation in the creation of Eric's

Fagen Friedman & Fulfrost, LLP
6300 Wilshire Boulevard, Suite 1700
Los Angeles, California 90048
Main: 323-330-6300 • Fax: 323-330-6311

Fagen Friedman & Fulfrost, LLP
6300 Wilshire Boulevard, Suite 1700
Los Angeles, California 90048
Main: 323-330-6300 • Fax: 323-330-6311

1   program, and properly implemented Eric's special education and related services.  Contrary to

2   Plaintiff's assertions, Eric made progress under his IEPs.  [Plaintiffs' Motion at 29: 19-20;

3   District's Motion at 8:7-10; 8:27-9:2.]  The District complied with all substantive and procedural

4   requirements of the IDEA.  Thus, Plaintiffs failed to satisfy the first prerequisite to receipt of

5   reimbursement for private school placement.

6        Plaintiffs argue that the District ignored Ms. Rodriguez's repeated requests for a change in

7   placement.  [Plaintiffs' Motion 29:17-19.]  As addressed above, Ms. Rodriguez made one request,

8   on April 8, 2003, which resulted in the convening of the May, 2003 IEP team meeting.  [AR

9   309:18-23; 462:11-463:15; 1252.]  At the IEP team meeting, the District addressed her concerns

10  and Ms. Rodriguez decided to continue with Eric's placement as it had been outlined in his

11  November 2002 annual IEP.  [AR 249:4; 464:1-9; 1260-1262.]  No evidence was introduced at the

12  due process hearing that Ms. Rodriguez had expressed any other complaints or concerns to the

13  district or, more specifically, had requested a private school placement.

14       Plaintiffs assert that the District abandoned Eric after the "juvenile court stepped in."

15  [Plaintiffs' Motion 29:20-21.]  However, as discussed in Sections I and II above, the District

16  consistently provided Eric with a FAPE until his withdrawal from the District in March 2004.

17  Thus, ALJ Brown properly concluded that the District did not deny Eric a FAPE and, therefore,

18  Plaintiffs' request for reimbursement must be denied.  [AR 158-159 (¶¶15-21).]

19       **B.**     **Plaintiffs Failed to Demonstrate that the Private Placements Were**

20           **Appropriate.**

21       In addition to proving that the District denied FAPE, Plaintiffs were required to

22  demonstrate that the private school placements were an appropriate substitute to ensure that Eric

23  receive the appropriate education.  *Burlington*, 471 U.S. 359, 105 S.Ct. 1996, 85 L.Ed.2d 385 ;

24  *Carter*, 510 U.S. 7, 114 S.Ct. 361, 126 L.Ed.2d 284 (1993).  While parents are not held to the

25  same standards of appropriateness as school districts, they must demonstrate that "the education

26  provided by the private school is reasonably calculated to enable the child to receive educational

27  benefits."  *Carter*, 510 U.S. at 11.

28

Fagen Friedman & Fulfrost, LLP
6300 Wilshire Boulevard, Suite 1700
Los Angeles, California 90048
Main: 323-330-6300 • Fax: 323-330-6311

1    As discussed in the ALJ's decision and in the District's Motion, Eric's placement at Ascent,

2   CEDU and Mt. Bachelor Academy arose solely out of Eric's adjudication by the juvenile court,

3   without consideration for his unique educational needs.  [AR 157 (¶15); 159 (¶22); District's

4   Motion 29:9-15.]  Plaintiffs offered no evidence at hearing that the private placements were

5   appropriate.  The Ascent program was "not a long term educational program," with over 80% of a

6   student's time spent on physical education, counseling, kitchen chores and wilderness training.

7   [AR 396:7-9; 1105]  Plaintiffs argue that, at the Ascent program Eric earned English, home

8   economics, physical education, and counseling credit.  [Plaintiffs' Motion 30:2-3.]  However, Mr.

9   Moore testified that students only earn academic credit if they "followed through" and completed

10  proper paperwork .  [AR 383:20; 384:3-7.]  No evidence was presented to support Plaintiffs

11  assertion that he received this credit.

12    Moreover, despite Plaintiffs assertion that Eric's behaviors were properly addressed while

13  attending the CEDU, no evidence was presented at hearing to support this contention.  [Plaintiffs'

14  Motion 30:2-11.]  As argued in the District's Motion, no one from CEDU appeared as a witness.

15  The only individual who expressed any opinion regarding the CEDU was Mr. Moore of the

16  Ascent program.  However, Mr. Moore had never been to the CEDU facility.  [AR 387:21; 388:1;

17  District's Motion 30:8-16.]  Further, while at CEDU, Eric received no speech and language

18  therapy, one of the disabilities under which Eric qualified for special education and related

19  services.  [AR 153-154 33.]  Without receipt of one of the key related services in Eric's IEP,

20  Plaintiffs failed to prove that CEDU was an appropriate placement.

21    Finally, Plaintiffs failed to prove that Mount Bachelor appropriately addressed Eric's

22  needs.  As pointed out in the District's Motion, Eric's academic, speech, truancy, and behavioral

23  needs were not addressed at Mount Bachelor.  During the vast majority of Eric's tenure at Mount

24  Bachelor, he failed to make academic progress, was placed on "academic warning," and received

25  low grades.  [AR 1109-1111.]  As with Ascent and CEDU, Eric did not receive any speech and

26  language therapy while at Mount Bachelor.  [AR 153-154 (33).]  Eric also demonstrated

27  behavioral problems while attending Mount Bachelor.  Only after receiving a phone call from his

28  probation officer did Eric's behavior improve.  [AR 1113; District's Motion 30:17-28.]

Fagen Friedman & Fulfrost, LLP
6300 Wilshire Boulevard, Suite 1700
Los Angeles, California 90048
Main: 323-330-6300 • Fax: 323-330-6311

1    Plaintiffs failed to prove that any of Eric's private placements properly addressed Eric's

2  unique needs.  Therefore, the ALJ properly denied reimbursement for all three placements.  [AR

3  159 (¶22).]

4    **C.    Plaintiffs Failed to Provide the District Adequate and Required Notice of**

5    **Their Intent to Privately Place.**

6    As outlined in the District's Motion, if a student has previously received public special

7  education and related services, parents *must* notify the school district of their intent to privately

8  place in order to ensure a proper claim for reimbursement. 20 U.S.C. §1412(a)(10)(C)(iii) [AR

9  31:7-12.]  This notice allows school district's to respond to parent's concerns and potentially

10 remedy any problem.  *Berger v. Medina City Sch. Dist.*, 348 F.3d 513, 524.

11   Specifically, notice may be provided at an IEP team meeting or in writing ten business

12 days prior to removal from the public school system.  *Id*.  Failure to provide the required notice

13 may cause parent's request for reimbursement to be limited or denied entirely.  20 U.S.C.

14 §1412(a)(10)(C)(iii).  No exception to this rule exists when the parent's decision to privately place

15 is driven by the desire to prevent their child's incarceration.  And, contrary to Plaintiffs' argument,

16 failure to provide this notice is fatal to the request for reimbursement.  [Plaintiffs' Motion 29:16-

17 17.]

18   Ms. Rodriguez failed to provide the District with proper notice of her intent to privately

19 place Eric.  During Eric's tenure at Hillsdale High School, Ms. Rodriguez received three copies of

20 the Notice of Procedural Safeguards at three IEP team meetings.  [1148; 1246; 1275.]  Upon

21 receipt, Ms. Rodriguez signed the IEP indicating she received the Notice of Procedural Safeguards

22 and understood her rights.  The Notice of Procedural Safeguards informed Ms. Rodriguez of the

23 requirement to notify the District of an intent to privately place.  [AR 306:7; 308:12, 22; 315: 19,

24 22; 316:2, 10; 1148; 1246; 1275.]

25   Ms. Rodriguez had ample opportunity to notify the District of her intent to privately place

26 or to seek input regarding Eric's prospective placement.  Eric was arrested in May, 2003.  [AR

27 995.]  An IEP team meeting was convened on November 13, 2003.  [AR 963-976.]  In November

28 or December 2003, Eric's private therapist recommended that Eric attend Rocky Mountain

Fagen Friedman & Fulfrost, LLP
6300 Wilshire Boulevard, Suite 1700
Los Angeles, California 90048
Main: 323-330-6300 • Fax: 323-330-6311

1   Academy.  [AR 345:1-346:21.]  Eric first appeared before the juvenile court on or about January

2   20, 2004.  [AR 323:2-7; 992.]  At that hearing the court "said that Eric can go to Rocky Mountain

3   Academy, which is part of the CEDU program."  [AR 323:18-20.]  Eric was adjudged a ward of

4   the juvenile court on March 4, 2004.  [AR 996.]

5        Despite this apparent long history leading to the decision to place Eric at Ascent, Ms.

6   Rodriguez did not contact the District until March 22, 2004, after Eric had left for Ascent, to

7   notify of her intent to privately place.  [AR 837:3-7; 998; 1002.]  Despite Plaintiffs knowledge that

8   Eric had been arrested and would soon face consequences imposed by the juvenile court, Ms.

9   Rodriguez did not seek assistance from the District nor did she notify the District of Eric's status

10  or pending departure.

11       Plaintiffs offered no evidence at hearing regarding the nature of the juvenile court order

12  that would excuse the requirement that Ms. Rodriguez notify the District of her intent to privately

13  place.  Plaintiffs assert that the juvenile court misled Ms. Rodriguez.  [Plaintiffs' Motion 29:23-

14  26.]  They also assert that Ms. Rodriguez believed that seeking assistance from the District would

15  be considered a violation of the juvenile court order.  [Plaintiffs' Motion 29:27-30:1.]  However,

16  Ms. Rodriguez testified that the reason she did not request assistance in funding Eric's program

17  was because "[she] didn't think that [the District] would even offer me or help me with the

18  program."  [AR 327.]  Further, Plaintiffs offered no evidence regarding Ms. Rodriguez's

19  understanding of the juvenile court order.  No witnesses from the juvenile court or probation

20  testified at the due process hearing to explain the court order.  Finally, Plaintiffs failed to offer any

21  evidence that would require the phrase "at parents expense" in the juvenile court documents to be

22  interpreted to mean anything other than Ms. Rodriguez agreed to fund Eric's private placement.

23  [AR 999.]

24       In addition to Plaintiffs failure to notify the District of the initial intention to privately

25  place, Plaintiffs also failed to notify the District of Eric's placement at CEDU in Southern

26  California and Mount Bachelor Academy in Oregon.  As articulated in the District's Motion, all

27  juvenile court records reflect that Ms. Rodriguez selected each of Eric's subsequent private

28  placements, without consulting the District in any way.  [District's Motion at 32:20-27.]  Then,

Fagen Friedman & Fulfrost, LLP
6300 Wilshire Boulevard, Suite 1700
Los Angeles, California 90048
Main: 323-330-6300 • Fax: 323-330-6311

1  she failed to provide the District with notice of her intent to place Eric in the private schools or

2  seek reimbursement.  Therefore, the district court should uphold the finding of the ALJ.

3       The Plaintiffs failed to establish a right to reimbursement for the Ascent, CEDU, and

4  Mount Bachelor programs.  They failed to prove the District denied Eric a FAPE; the failed to

5  demonstrate that the private placements were appropriate to meet Eric's unique needs; and Ms.

6  Rodriguez failed to provide the required notice prior to placing Eric at the private schools.  Thus,

7  this Court should affirm the ALJ's determination that Plaintiffs are not entitled to reimbursement

8  for these private placements.

9

10  **IV.    CONCLUSION**

11       Plaintiffs are seeking to have the District pay for a private school placement for which they

12  gave absolutely no notice for over two years.  They attempt to characterize the District's actions as

13  abandonment when, in fact, the District provided Eric with the special education and related

14  services required by his unique needs.  This occurred until the moment that Ms. Rodriguez advised

15  that Eric was going to attend school elsewhere.  With no complaints about what the District was

16  doing, with no notice of Eric's criminal proceedings and with no request that the District fund the

17  private placements, Plaintiffs cannot now seek reimbursement in this case.  Therefore, the District

18  respectfully requests that this Court affirm the decision of ALJ Brown, on all issues, in favor of

19  the District.

20

21  DATED: February 27, 2008       FAGEN FRIEDMAN & FULFROST, LLP

22

23         By:  /s/ Kimberly A Smith

24            Kimberly A. Smith
          Attorneys for Defendant San Mateo Union High

25            School District

26

27

28