1  Howard A. Friedman, SBN 61187
   hfriedman@fagenfriedman.com
2  Kimberly A. Smith, SBN 176659
   ksmith@fagenfriedman.com
3  FAGEN FRIEDMAN & FULFROST, LLP
   6300 Wilshire Boulevard, Suite 1700
4  Los Angeles, California  90048
   Phone: 323-330-6300
5  Fax: 323-330-6311

6  Attorneys for Defendant San Mateo Union High
   School District
7

8              UNITED STATES DISTRICT COURT

9       NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

10

11 ERIC RODRIGUEZ AND KIMBERLIN        CASE NO. C 07-02360 PJH
   RODRIGUEZ,
12                                     **DEFENDANT SAN MATEO UNION
            Plaintiff,                 HIGH SCHOOL DISTRICT'S REPLY TO
13                                     PLAINTIFF'S OPPOSITION TO ITS
        vs.                            MOTION FOR SUMMARY JUDGMENT**
14
   SAN MATEO UNION HIGH SCHOOL         Date:   April 9. 2008
15 DISTRICT,                           Time:   9:00 a.m.
                                       Crtrm.: 3
16          Defendant.

17

18 / / /

19 / / /

20 / / /

21

22

23

24

25

26

27

28
   00210.00104/64490.1                                    C 07-02360 PJH
   ─────────────────────────────────────────────────────────────────
          DEFENDANT SAN MATEO UNION HIGH SCHOOL DISTRICT'S REPLY
          TO PLAINTIFF'S OPPOSITION TO ITS MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

**Page**

I. THE JUVENILE COURT PROCEEDINGS IMPOSED NO OBLIGATION ON THE DISTRICT TO FUND ERIC'S PRIVATE PLACEMENTS ..................................... 1

    A. The Doctrine of Collateral Estoppel Is Wholly Inapplicable In This Case ............... 1

    B. There is No Evidence That the Juvenile Court Found Eric's Placements to Provide the Special Education and Related Services Which Were Appropriate to Meet His Unique Educational Needs. .............................................. 3

II. FROM JULY 19, 2003 UNTIL HIS PLACEMENT OUTSIDE THE DISTRICT, THE DISTRICT PROVIDED ERIC WITH A FREE AND APPROPRIATE PUBLIC EDUCATION ................................................................................................. 5

    A. An Adequate and Appropriate BSP Was Developed and Implemented by the District for Eric. .............................................................................................. 5

    B. The District Did Not Deny Eric a FAPE by Failing to Provide Mental Health Services. ........................................................................................................ 7

    C. The District Did Not Deny Eric a FAPE by Failing to Have All Necessary Attendees at Eric's IEP's. ....................................................................................... 8

    D. The District Did Not Deny Eric a FAPE by Failing to Ascertain His Present Levels of Functioning as of the November 2003 IEP. ............................... 9

    E. The District Adequately Developed Goals in Eric's November 13, 2003 IEP. .................................................................................................................... 10

    F. The District Adequately Met Eric's Needs in the Area of Speech and Language. ................................................................................................................ 10

III. PLAINTIFFS ARE NOT ENTITLED TO REIMBURSEMENT FOR ERIC'S PRIVATE SCHOOL PLACEMENT AND RELATED TRANSPORTATION COSTS FROM MARCH 2004 TO JUNE 2006 .............................................................. 12

    A. Eric Did Not Require a Residential Placement to Receive FAPE. .......................... 12

    B. Failure to Give Proper Notice Prohibits Reimbursement In This Case. .................. 14

IV. CONCLUSION ............................................................................................................. 15

Fagen Friedman & Fulfrost, LLP
6300 Wilshire Boulevard, Suite 1700
Los Angeles, California 90048
Main: 323-330-6300 • Fax: 323-330-6311

# TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*Adams v. State of Oregon,* 195 F.3d 1141 (9th Cir. 1999) .................................................... 3

*Ash v. Oswego Sch. Dist.,* 766 F.Supp. 852 (D.Or. 1991) .................................................. 13

*B.B. v. Hawaii Dept. of Educ.,* 483 F.Supp. 1042 (D. Hawai'i 2006) ................................. 10

*Board of Educ. of the Hendrick Hudson Central Sch. Dist. v. Rowley,* 458 U.S. 176, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982) ......................................................................... 3, 10, 11

*Board of Educ. for Oak Park and River Forest High Sch. Dist. v. Illinois State Bd. Of Educ. and Kelly E.,* 21 F.Supp.2d 862, 877 (N.D. Ill. 1998) .................................................. 8

*Burlington v. Dept. of Educ.,* 471 U.S. 359, 373-374, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985) ................................................................................................................... 1, 4, 12

*Clovis Unified Sch. Dist. v. Office of Admin. Hearings,* 903 F.2d 635 (9th Cir. 1990) ................ 12

*Dreher v. Amphitheater Unified Sch. Dist.,* 22 F.3d 228, 231 (9th Cir. 1994) ..................... 8-9

*French v. Omaha Public Schools,* 766 F.Supp. 765 (D.Neb. 1991) ..................................... 10

*Gregory K. v. Longview Sch. Dist.,* 811 F.2d 1307 (9th Cir. 1987) ................................. 3, 11

*Kona Enterprises Inc. v. Estate of Bishop,* 243 Fed.Appx. 274 (9th Cir. 2007) ..................... 2

*M.L. v. Federal Way Sch. Dist.,* 394 F.3d 634 (9th Cir. 2004) ............................................. 5

*Northern California River Watch v. Humboldt Petroleum,* 162 Fed.Appx. 760 (9th Cir. 2006) ................................................................................................................................... 2

*Robb v. Bethel Sch. Dist. #403,* 308 F.3d 1047 (9th Cir. 2002) ............................................ 8

*Union Sch. Dist. v. Smith,* 15 F.3d 1519 (9th Cir. 1994) .................................................... 11

*W.G. v. Bd. of Trustees of Target Range Sch. Dist. No. 23,* 960 F.3d 1479 (9th Cir. 1992) ............ 5

*Witte v. Clark County Sch. Dist.,* 197 F.3d 1271 (9th Cir. 1999) ......................................... 8


**STATE CASES**

*In re Deon W.,* 64 Cal.App.4th 143 (1998) ...................................................................... 3-4

Fagen Friedman & Fulfrost, LLP
6300 Wilshire Boulevard, Suite 1700
Los Angeles, California 90048
Main: 323-330-6300 • Fax: 323-330-6311

**FEDERAL STATUTES**

20 U.S.C. §1414(d)(1)(A)(i)(II) .................................................................................... 10

20 U.S.C. §1414(d)(3)(B)(i) ....................................................................................... 5, 7

20 U.S.C. §1415(f)(3)(E) ................................................................................................ 5

20 U.S.C. §1415(k)(1)(D) .............................................................................................. 7

**FEDERAL REGULATIONS**

34 C.F.R. §300.344(a) (1999) ........................................................................................ 9

34 C.F.R. §300.346(a)(2)(i) (1999) ........................................................................... 5, 7

34 C.F.R. §300.520(B)(1)(i) .......................................................................................... 7

**STATE STATUTES**

Cal.Educ.Code §56320 .................................................................................................. 9

Cal.Educ.Code §56320(f) .............................................................................................. 7

Cal.Educ.Code §56341 .................................................................................................. 9

Cal.Educ.Code §56341.1(b)(1) .................................................................................. 5, 7

Cal.Educ.Code §56345(a)(1) ......................................................................................... 9

Cal.Educ.Code 56345(a)(2) ......................................................................................... 10

Cal.Educ.Code §56505(f) .............................................................................................. 5

Cal.Educ.Code §56505(l) .............................................................................................. 8

Cal.Gov.Code §7576(b)(3) ............................................................................................ 7

Cal.Gov.Code §7576(b)(5) ............................................................................................ 7

Cal.Welf.&Inst.Code §601 ............................................................................................ 3

Cal.Welf.&Inst.Code §602 ............................................................................................ 3

Cal.Welf.&Inst.Code §706 ............................................................................................ 3

Cal.Welf.&Inst.Code §706.5(a) ................................................................................. 3, 4

Cal.Welf.&Inst.Code §706.5(b) .................................................................................... 4

Cal.Welf.&Inst.Code §706.5(c)(5) ............................................................................ 3, 4

*Fagen Friedman & Fulfrost, LLP*
6300 Wilshire Boulevard, Suite 1700
Los Angeles, California 90048
Main: 323-330-6300 • Fax: 323-330-6311

**STATE REGULATIONS**

5 Cal.Code.Regs. §3001(aa) ..................................................................................................... 7

5 Cal.Code.Regs. §3001(f) ...................................................................................................... 7

5 Cal.Code.Regs. §3052(b) ...................................................................................................... 7

Fagen Friedman & Fulfrost, LLP
6300 Wilshire Boulevard, Suite 1700
Los Angeles, California  90048
Main: 323-330-6300 • Fax: 323-330-6311

**MEMORANDUM OF POINTS AND AUTHORITIES**

Defendant San Mateo Union High School District ("District") presents the following reply to Plaintiffs' Opposition to its Motion for Summary Judgment in this action. In their opposition, Plaintiffs have failed to point this Court to any evidence in the administrative record or any pertinent legal authority which would require this Court to reverse or modify the decision by Administrative Law Judge ("ALJ") Suzanne Brown in the underlying administrative special education "due process" proceeding. Thus, the District respectfully requests that the Court grant the District's Motion and fully affirm the decision of ALJ Brown.

### I. THE JUVENILE COURT PROCEEDINGS IMPOSED NO OBLIGATION ON THE DISTRICT TO FUND ERIC'S PRIVATE PLACEMENTS

In the District's Motion, it argued that Plaintiffs are not entitled to reimbursement in this case, based on their failure to establish all of the elements set forth by the Supreme Court in *Burlington v. Dept. of Educ. ("Burlington"),* 471 U.S. 359, 373-374, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985). Specifically, to obtain reimbursement, Plaintiffs were required to show that (1) the District had denied Eric a FAPE, (2) Eric's private placements were appropriate, and (3) proper notice was given to the District prior to Eric's withdrawal.[1] On the second element, that is whether or not Eric's private placements were appropriate, Plaintiffs argue that this has been established by operation of the collateral estoppel doctrine and Eric's juvenile court records. The District disagrees.

#### A. The Doctrine of Collateral Estoppel Is Wholly Inapplicable In This Case

In asserting the doctrine of collateral estoppel, Plaintiffs simply cite to the rule, highlighting the concept of privity, but with no analysis of applicable case law. In fact, factors such as a close relationship and substantial interaction are required to establish privity between a party and non-party.

---

[1] For a full discussion of the *Burlington* standard, see District's Motion at 27:19-33:13.

Fagen Friedman & Fulfrost, LLP
6300 Wilshire Boulevard, Suite 1700
Los Angeles, California 90048
Main: 323-330-6300 • Fax: 323-330-6311

> The concept of privity for the purposes of res judicata or collateral estoppel refers 'to a mutual or successive relationship to the same rights of property, or to such an identification in interest of one person with another as to represent the same legal rights....' " [Citation omitted.] "The California courts further apply privity where 'the nonparty has an identity of interest with, and adequate representation by, the party in the first action and the nonparty should reasonably expect to be bound by the prior adjudication.' " [Citation omitted.]

*Northern California River Watch v. Humboldt Petroleum,* 162 Fed.Appx. 760, 764 (9th Cir. 2006) [public interest group in privity with State who asserted its rights in prior litigation]; *see also, Kona Enterprises, Inc. v. Estate of Bishop,* 243 Fed.Appx. 274 (9th Cir. 2007) [general partner for limited partnership in privity with the partnership party for purposes of applying collateral estoppel].

There exists no relationship between the District and the juvenile court such that that the legal rights or obligations of the juvenile court should be imposed on the District as one in the same. This is evident from the fact that Eric's criminal proceedings did not adjudicate any educational issues under the IDEA or California Education Code. Rather, the juvenile court proceedings focused on the appropriate sentence and probationary terms for a criminal act for which Eric was convicted. [AR 992-1023.] Moreover, the specific orders issued by the juvenile court were issued for and directed at Eric and/or his mother directly. [AR 999-1001; 1002; 1004-1005; 1007; 1009-; 1010-1013; 1017-1018.] In fact, to enforce those orders against the District under a collateral estoppel argument, Plaintiffs would actually have to establish privity between themselves and the District, which cannot be done.

The only "evidence" cited by Plaintiffs to show the alleged privity is the testimony of Ms. Rodriguez regarding Eric's school probation officer Glen Bautista. However, this testimony was entirely speculative. (Plaintiffs' Opposition at 5:23-25; [AR 251:19252:1]; *see also,* District's Opposition to Plaintiff's Motion for Summary Judgment at 10:1-13 [summarizing Ms. Rodriguez' testimony].) By contrast, the testimony of the District's witnesses definitively established that Mr. Bautista was not involved in Eric's juvenile criminal proceeding, was not Eric's *court* probation officer, and merely served as Eric's "*truancy on-site* probation officer." [AR 459:165-460:19; AR 461:5-7, 461:19-462:8, 488:5-14; 746:20-747:8; 1268.] Thus, not only was the District not in privity with the court or Plaintiffs regarding the juvenile proceedings, the record clearly

DEFENDANT SAN MATEO UNION HIGH SCHOOL DISTRICT'S REPLY
TO PLAINTIFF'S OPPOSITION TO ITS MOTION FOR SUMMARY JUDGMENT

establishes that the District had no communications or knowledge regarding these issues until the special education due process proceeding was initiated. [AR 267:12-15.]

Finally, Plaintiffs' assertion that the District is "appealing" the juvenile court orders is a red herring. (*See,* Plaintiffs' Opposition at 5:20-21.) Rather, this lawsuit concerns the District's defense against the IDEA claims brought against it by the Plaintiffs, first in the administrative proceeding before OAH and now in this appeal to the district court.

### B. There is No Evidence That the Juvenile Court Found Eric's Placements to Provide the Special Education and Related Services Which Were Appropriate to Meet His Unique Educational Needs.

To determine whether a placement and related services are appropriate, and therefore provide a student with FAPE, one must show that they (1) are designed to meet the student's unique needs; (2) are reasonably calculated to provide the student with "some" educational benefit; (3) comport with the student's IEP; and (4) are provided in the least restrictive environment ("LRE"). *Board of Education of the Hendrick Hudson Central School District v. Rowley, ("Rowley")* (1982) 458 U.S. 176, 102 S.Ct. 3034; *Gregory K v. Longview Sch. Dist.*, 811 F.2d 1307 (9th Cir. 1987); *Adams v. State of Oregon*, 195 F.3d 1141 (9th Cir. 1999). In this case, Plaintiffs adduced no evidence at the due process hearing which established that Ascent, CEDU or Mount Bachelor provided Eric with a FAPE. Therefore, they are not entitled to reimbursement for those placements.

Plaintiffs argue that California Welfare and Institutions Code section 706.5(c)(5) establishes that the Juvenile Court took Eric's special needs into consideration in approving his various placements.[2] First, this section is only applicable when a court has adjudged a minor a ward of the court for truancy or conviction of a crime *and* is considering a foster care placement for the minor. Cal.Welf.&Inst.Code §§ 601, 602, 706, 706.5; *see also, In re Deon W.,* 64

---

[2] Plaintiffs actually cite to the California "Health & Welfare Code" which does not exist. Further, the section cited, section 705.5, does not exist in the Welfare and Institutions Code. However, based on the subsections used and the subject matter being discussed, it appears that Plaintiffs intended to refer to California Welfare and Institutions Code section 706.5(c)(5).

Cal.App.4th 143, (1998). It specifically describes the contents of the social study when "placement in foster care is recommended by the probation officer, or where the minor is already in foster care placement [or] the court orders foster care placement . . . ." Cal.Welf.&Inst.Code §706.5(a) and (b). Further, *in that context*, the probation officer is required to consult with the school district so that it can report to the Court that the minor's education will be taken care of.

Section 706.5(c)(5) provides that the probation officer shall provide the following specific information to the juvenile court

> Whether the minor has been or will be referred to educational services and what services the minor is receiving, including special education and related services if the minor has exceptional needs . . . . . The probation officer or child advocate shall solicit comments *from the appropriate local education agency* prior to completion of the social study.

[Emphasis added.] Not only was there no social study in the court records produced by Plaintiffs in the due process proceeding, there is no other evidence that the juvenile court consulted with the District at all prior to approving the private placements selected by Ms. Rodriguez. As discussed above, the District did not even know of Eric's criminal case until the due process proceeding.[3] [AR 267:12-15.] In fact, the testimony at hearing was consistent that nobody reviewed, evaluated or ensured implementation of Eric's special education needs once he left the District. [AR 153-154 (¶33); 380:15-381:22; 369:7-9; 383:20; 384:3-7; 385:25; 396:14-16; 400:18-19; 1105 (regarding Ascent); AR 153-154 (¶33); 387:21-23; 388:1 (regarding CEDU); AR 153-154 (¶33); 1109-1111; 1113; 1115 (regarding Mount Bachelor).] Thus, under the applicable *Burlington* analysis, Plaintiffs failed to demonstrate that the juvenile court placements were appropriate, provided FAPE and warrant reimbursement in this case.

///

///

---

[3] Neither the due process complaint nor Plaintiffs' prehearing conference statement made reference to the juvenile case. [AR 1-4.] The District was given its first evidence of the case when the juvenile court documents were presented as evidence by Plaintiffs. [AR 992-1023.]

II. **FROM JULY 19, 2003 UNTIL HIS PLACEMENT OUTSIDE THE DISTRICT, THE DISTRICT PROVIDED ERIC WITH A FREE AND APPROPRIATE PUBLIC EDUCATION**

The issues regarding the program and services provided by the District from July 19, 2003, until Eric left in March 2004 have been extensively briefed in both the District's Motion for Summary Judgment and its opposition to Plaintiffs' Motion. The District will try not to repeat itself here but limit its remarks to the specific points made in Plaintiffs' opposition.[4]

> A. <u>**An Adequate and Appropriate BSP Was Developed and Implemented by the District for Eric.**</u>

The District employed appropriate "strategies, including positive behavioral interventions, strategies, and supports to address [Eric's] behavior" which resulted in improvements. 20 U.S.C. § 1414(d)(3)(B)(i); 34 C.F.R. § 300.346(a)(2)(i) (1999); Cal.Educ.Code § 56341.1(b)(1). As discussed in the District's Motion, the ALJ held that an environmental assessment was not required, given that the team was able to identify Eric's behaviors, draft a BSP to address those behaviors and, importantly, see those behaviors improve over time. [District's Motion at 15:1-17, *citing* AR 149 (¶16).] With this improvement, the denial of the environmental assessment, even if a procedural violation, did not result in a denial of FAPE. *M.L. v. Federal Way Sch. Dist.,* 394 F.3d 634, 646 (9th Cir. 2004); *W.G. v. Bd. of Trustees of Target Range Sch. Dist. No. 23,* 960 F.2d 1479, 1484 (9th Cir. 1992); 20 U.S.C. §1415(f)(3)(E); Cal. Educ. Code § 56505(f).

In their opposition, Plaintiffs claim that Eric's BSP's were ineffective, as evidenced by his disciplinary referrals and truancy. However, the evidence at hearing demonstrated that the BSP's were quite effective in improving both Eric's behavior problems and truancy.

///

///

---

[4] The subsections are also presented in the order set forth in that opposition. Thus II.C. of this reply will respond to II.C. of the opposition, even if the subject matter was presented in a different section in the District's original motion.

In the ninth grade, a BSP was developed to address Eric's "inappropriate classroom behavior." [AR 602:22-604:2; 1249.] The BSP consisted of teaching strategies, positive reinforcement, one-to-one work on assignments in class and a tutorial study period, escort by an instructional assistant, anger management participation, and weekly progress reports and was fully implemented by the District. [AR 604:14-605:3; 605:11-13; 1249.] During that year, these behaviors changed and the disciplinary referrals became infrequent. [AR 481:21-485:22; 606:2-10; 1170]

By the tenth grade, Eric's negative behaviors of disruption and defiance from the previous year were under control. [AR 747:17-21; 748:7-17.] In fact, at hearing, Ms. Rodriguez admitted that Eric had no disciplinary referrals from his tenth grade teacher. [AR 313:22-314:1.] Thus at Eric's November 2003 IEP, a new BSP was drafted to address Eric's attendance issue, his primary problem at this point in time. [AR 314:2-315:7; 486:13-25; 618:18-619:1; 746:10-747:12; 748:18-20; 975; 1280.] Once implemented, Eric's attendance improved, along with his grades. [AR 752:9-753:24.]

Moreover, despite Plaintiff's contention, Eric's BSP did, in fact, specifically "address how to actually get Eric to school." (Opposition at 8:12-13.) First, Eric's teacher explained that the various tools to be used at school were designed as incentives to improve his attendance, knowing that he would receive extra support. [AR 750:10-24] Second, he was assigned a probation officer, his teacher counseled him regarding the truancy and she made successful efforts to track him down and bring him into school when he was absent. [AR 750:25-751:14] Finally, as Eric was not truant every day, the various strategies were used on those days he did attend. [AR 646:6-647:10.]

Plaintiffs' contention that Eric was entitled to a BIP is also unfounded. As Plaintiffs' note, "[a] BIP flows from an assessment…." (Opposition at 8:6.) In other words, a BIP is developed when a student is receives a functional analysis assessment ("FAA") under California law.[5] Thus,

---

[5] The "BIP", by that name is not referenced in the IDEA.

if the assessment is not warranted, then neither is the BIP. Because the FAA requires evidence of behavior that is self-injurious, assaultive, destructive or seriously maladaptive, the ALJ correctly concluded that Eric did not require an FAA. [AR 149 (¶¶ 16, 17)]; *see also,* 5 Cal.Code.Regs. §§ 3001(aa) and (f); 3052(b). Specifically, Eric's behavior, other than truancy had significantly improved and truancy, by itself, did not qualify as the type of behavior mandating an FAA or FBA. [AR 149 (¶17); 615:16-616:3.]

The BSP was appropriate, effective, and designed to meet Eric's unique needs. Thus, under all applicable federal and state law, the District provided Eric a FAPE with respect to his behavioral issues. 20 U.S.C. §1414(d)(3)(B)(i); 20 U.S.C. §1415(k)(1)(D); 34 C.F.R. §300.346(a)(2)(i) (1999); 34 C.F.R §300.520(B)(1)(i); Cal.Educ.Code §56341.1(b)(1); 5 Cal.Code.Regs. §3001(aa) and (f); 5 Cal.Code.Regs. §3052(b).)

  **B.**   **The District Did Not Deny Eric a FAPE by Failing to Provide Mental Health Services.**

Plaintiffs claim that ALJ Brown ignored the testimony of Messrs. Moore, Moffitt and Conway in deciding that the District was not required to refer Eric for County Mental Health Services. (Opposition at 8:26-9:2.) However, these witnesses consistently testified that they had no knowledge regarding the program and services provided to Eric while he was at Hillsdale. [AR 394:11-385:12; 399:6-9; 404:12-18; 553:21-554:14; 564:16-564:22; 788:16-789:12; 797:14-798:10…] Thus, ALJ Brown made a proper determination regarding the witnesses' credibility and the relevance of their testimony on the issue of mental health services. [AR 150-151 (¶22).]

Plaintiffs have pointed to no evidence in their opposition which indicates that the District had an obligation to refer Eric to County Mental Health due to an emotional or behavioral problem which was preventing him from receiving the benefit of his education and which required outside mental health treatment. Cal.Educ.Code §§56320(f), 56331; Cal.Gov.Code §7576(b)(3) and (5). In fact, their claim that "[t]he district IEP-Team members documented Eric's need for a referral to County Mental Health on the two [BSP's] that they drafted" is completely disingenuous. (*See,* Opposition at 10:3-5.) Rather, the BSP's stated that a referral would be considered as a "reactive

Fagen Friedman & Fulfrost, LLP
6300 Wilshire Boulevard, Suite 1700
Los Angeles, California 90048
Main: 323-330-6300 • Fax: 323-330-6311

strategy to employ…if [the] problem behavior occurs again." [AR 1249; 1280.] Because, with each BSP, Eric's behavior improved, the referral was not required.

Finally, the fact that Eric received mental health services at his private placements is not evidence that the District had denied him a FAPE for failure to make a referral. As the ALJ concluded, even if these services provided him some personal benefit, his behavior issue at the time of his departure was truancy, which did not call for a mental health referral. [AR 149-150 (¶18); 151 (¶22), *citing Board of Educ. For Oak Park and River Forest High Sch. Dist. v. Illinois State Bd. Of Educ. and Kelly E.,* 21 F.Supp.2d 862, 877 (N.D. Ill. 1998).]

### C. The District Did Not Deny Eric a FAPE by Failing to Have All Necessary Attendees at Eric's IEP's.

#### 1. *Plaintiffs Cannot Introduce A New Issue Which Was Not Adjudicated Below.*

Plaintiff cannot claim that the District failed to have a psychologist attend either Eric's November 12, 2002 or May 1, 2003 IEP's, as such claims were not at issue in the underlying administrative hearing. As discussed in the District's opposition to Plaintiffs' motion for summary judgment, a three year statute of limitations was applicable in this case. Cal.Educ.Code §56505(l), *prior to amendment by* STATS.2005, c.653 (A.B. 166), §43.5 eff. Oct. 7, 2005, operative Oct. 9, 2006. Because Plaintiffs' initial request for due process was filed on July 20, 2006, the three-year statute of limitations applied and Plaintiffs were barred from asserting any claims arising out of conduct occurring prior to July 20, 2003.[6]

Moreover, where a claim is not raised in the underlying administrative proceeding, and therefore not exhausted, this Court is unable to consider it. Under the IDEA, the exhaustion requirement is jurisdictional, *i.e.,* without administrative exhaustion, the federal courts may not hear or rule on a particular IDEA claim. *See, Robb v. Bethel Sch. Dist. #403*, 308 F.3d 1047, 1050 (9th Cir. 2002) *Witte v. Clark County Sch. Dist.*, 197 F.3d 1271, 1274 (9th Cir. 1999)*; Dreher v.*

---

[6] ALJ Brown actually used the date of July 19, 2003 in setting the issues for hearing. [AR 56-58.]

*Amphitheater Unified Sch. Dist.*, 22 F.3d 228, 231 (9th Cir. 1994) . Hence, the Court may not consider whether the District denied FAPE by failing to include a psychologist at Eric's November 12, 2002 and May 1, 2003 IEP Team meetings.

### 2. *A Psychologist Was Not Required at the November 2003 IEP.*

The District's Motion sets forth that it was not required to include a school psychologist at the November 2003 IEP team meeting, citing 34 C.F.R. §300.344(a) (1999) and California Education Code section 56341 as its authority. (District's Motion at 19:1-20:15.) Plaintiffs have offered no contrary authority on this issue. Thus, the District requests that the Court affirm ALJ Brown's determination that "the absence of any school psychologist at the November 2003 IEP meeting was not a procedural violation" and, therefore, did not result in a denial of FAPE. [AR 151 (¶¶ 24-25).]

### D. **The District Did Not Deny Eric a FAPE by Failing to Ascertain His Present Levels of Functioning as of the November 2003 IEP.**

The version of Education Code section 56345(a)(1) which applied during the time period at issue provided as follows:

> The individualized education program is a written statement for each individual with exceptional needs . . . that include the following:
>
> (1) A *statement* of the individual's present levels of performance.

[Emphasis added.]

The statute does not require that school districts perform independent academic *assessments* to fulfill this requirement. Rather, assessments are only performed for an initial determination of eligibility for special education and, where circumstances warrant, reassessment initiated by a parent or teacher request. Cal.Educ.Code §56320. Plaintiffs have presented *no authority* to support their assertion that the District needed to perform an academic assessment in connection with the November 13, 2003 IEP.

As set forth in the District's Motion, the November 13, 2003 IEP team explicitly outlined Eric's present levels of performance based on all available information. (*See,* District's Motion at 22:15-24:13.) This information was set forth in several parts of the IEP, including the Assessment

Information/Present Level of Performance Report prepared by his special education teacher Ms. Hahn. [AR 1271, 1272 and 1274.] Further, this information established "baseline data" from which the IEP team could develop appropriate goals. *See, e.g., French v. Omaha Public Schools,* 766 F.Supp. 765, 794-796 (D.Neb. 1991); *B.B. v. Hawaii Dept. of Educ.,* 483 F.Supp. 1042, 1047 (D. Hawai'i 2006). Accordingly, ALJ Brown concluded that the IEP team members, who were very familiar with Eric and his needs, were able make "knowledgeable recommendations about his proposed program" such that he could receive the benefit of his education as required for FAPE. [AR 152 (¶27); 616:22; 695:12-21; 743:11; 744:25-745:4; 745:11-22; 974.]

### E. The District Adequately Developed Goals in Eric's November 13, 2003 IEP.

Without providing any authority, citing to the record or discussing the specific goals in the IEP, Plaintiffs simply assert that the District failed to develop adequate goals. In fact, at hearing, Plaintiffs provided "no testimony, documentary evidence, or argument regarding how the November 13, 2003 goals were inadequate, or how any alleged inadequacy in the goals denied Student educational opportunity or significantly interfered with the parent's participation in the IEP process." [AR 153 (¶30.)] Further, Plaintiffs' claim that "Eric did, in fact, fail in the District's program" is patently incorrect. Following the November 13, 2003, IEP, Eric was no longer failing. [AR 752:9-24.]

As set forth in the District's Motion and held by ALJ Brown, the District has demonstrated that it developed goals which would allow Eric "to be involved in and make progress in the general education curriculum and meet [his] other educational needs that result from [his] disability." 20 U.S.C. § 1414(d)(1)(A)(i)(II); *see also* Cal.Educ.Code § 56345(a)(2); (District's Motion at 24:14-25:28; AR 153 (¶30)).

### F. The District Adequately Met Eric's Needs in the Area of Speech and Language.

The cornerstone for a determination that services are appropriate is whether or not they will provide some educational benefit to the student. *Rowley,* 458 U.S. at 206-207, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982). Where no benefit will be provided, there is no denial of FAPE for failing to provide a particular service. Here, because Eric would not attend his individual sessions,

he was already receiving no benefit. Thus, ALJ Brown recognized that the move to a consultative model was actually an appropriate attempt to deliver a benefit to Eric under the circumstances. [AR 153 (¶¶31-32).]

As the ALJ concluded, "[g]iven Student's frequent absences from school, being pulled out of academic classes to attend speech therapy no longer facilitated his overall educational needs. Moreover, because Student already knew from years of speech therapy what strategies to use to avoid stuttering, this 'therapeutic pause' in direct speech therapy would only minimally impact his ability to improve his speech fluency." [AR 153 (¶32).] Thus, the District did not "give up" on Eric but, instead, made efforts to find the optimal manner in which to provide him the services he needed.

Plaintiffs cite to *Union School District v. Smith,* 15 F.3d 1519 (9th Cir. 1994) for the proposition that a District cannot deny a program just because it believes that it cannot be implemented. However, this case stands for the narrow rule that a program must be offered where the expectation is that the family will reject it. In this case, Ms. Rodriguez raised no objection to the modification presented at the IEP Team meeting. [AR 691:21-692:4; 1297.] Thus, the District did not make a determination based on a parent's rejection of services as was the case in the *Union* decision.

In *Union,* the Ninth Circuit clearly set out the central inquiry in determining whether a program meets "[t]he substantive requirement of the IDEA . . . ." Specifically, it must be ' " individually designed to provide educational benefit to the handicapped child." ' " *Id.* at 1525, *citing Gregory K. v. Longview Sch. Dist.,* 811 F.3d 1307, 1314 (1987), *quoting, Rowley,* 458 U.S. at 201, 102 S.Ct. at 3048. Eric's IEP team ensured that this was the case and the ALJ's determination that the District offered FAPE should be affirmed.

Even assuming, arguendo, that the District denied Eric a FAPE by changing the model for speech and language therapy, the remedy which Plaintiffs are seeking – reimbursement for tuition at Ascent, CEDU and Mount Bachelor is wholly inappropriate. Plaintiffs presented no evidence that these services were delivered at any of these institutions.

**III. PLAINTIFFS ARE NOT ENTITLED TO REIMBURSEMENT FOR ERIC'S PRIVATE SCHOOL PLACEMENT AND RELATED TRANSPORTATION COSTS FROM MARCH 2004 TO JUNE 2006**

As set forth in detail in the District's Motion, ALJ Brown properly denied Plaintiffs' reimbursement request in this case based on the *Burlington* analysis. Plaintiffs' failed to demonstrate that (1) the District had denied Eric a FAPE, (2) Eric's private placements were appropriate, and (3) proper notice was given to the District prior to Eric's withdrawal. (District's Motion at 27:19-33:13; *see also,* AR 157-158 (¶15-16), 159 (¶22).) Again, the District will limit its comments here to the specific arguments raised in Plaintiffs' Opposition.

**A. Eric Did Not Require a Residential Placement to Receive FAPE.**

For the reasons discussed above in section II, together with the corresponding discussion in the District's original motion, the District did not fail to provide Eric with a FAPE during the time he attended the District program. Thus, the first element of the test for reimbursement is not satisfied. Further, it is interesting that Plaintiff focuses on the Ninth Circuit's decision in *Clovis v. Unified Sch. Dist. v. California Office of Administration*, 903 F.2d 635, 643 (9th 1990) and its analysis of when a *residential* placement is an appropriate placement for purposes of reimbursement. First ALJ Brown correctly noted that in *Clovis* the Ninth Circuit held that school districts are not responsible for paying for a unilateral residential placement when the residential component is necessitated by "medical, social, or emotional problems . . . apart from the learning process." [AR 157 (¶ 15).] Second, Plaintiffs presented no evidence to avoid application of that rule.

Plaintiffs argue that Eric's medical, social and emotional problems were "intertwined" such that the residential placements were required. (Opposition at 15:7-16.) However, there is nothing in the record which suggests that Eric *required* a residential placement to receive FAPE. In fact, the last IEP noted that Eric's sole behavior issue was truancy, not a medical, social or emotional issue, and the last BSP was improving his truant behavior. [AR 314:2-315:7; 486:13-25; 618:18-619:1; 746:10-747:12; 748:18-20; 752:9-753:24; 975; 1280.] Again, even if Eric

received emotional counseling at his private placements, this is not evidence that the District had denied him a FAPE for failure to provide it. [AR 149-150 (¶18); 151 (¶22).]

Plaintiffs also cite to *Ash v. Oswego Sch. Dist.,* 766 F.Supp. 852 (1991) as support to the contention that Eric required a residential placement. However, this case involved an autistic student who was so severely handicapped that he could not function outside of the school environment.

> This court finds the opinion of Dr. Mary Cerreto that Christopher cannot generalize from one learning environment to another-that is, Christopher cannot learn something at school and then take that learning home or into the community-to be compelling. Dr. Cerreto's conclusion is consistent with all of the evidence in the record as to Christopher's severe disability. Christopher has a severe anxiety or panic disorder which cannot be addressed effectively in a classroom setting. In order for Christopher to benefit from a learning environment, the environment in which learning takes place must be a twenty-four-hour-a-day, seven-day-a-week, completely consistent environment.
>
> An appropriate education for Christopher is an education which will make it possible for him to be successful outside of a classroom setting. The evidence in this case shows that an appropriate education for Christopher is one that only a twenty-four-hour-a-day, seven-day-a-week educational environment can provide. While residential placement for a handicapped child is only appropriate in very limited circumstances, Christopher's medical, social and emotional problems are so severe that they are not segregable from his learning process, and therefore residential placement is required for educational purposes. Daily living skills, such as toileting and eating and dressing, can only be taught to him and reinforced for him in the consistency of a residential setting.

*Id.* at 863. One cannot compare a case like this to Eric's.

Mrs. Rodriguez never requested that the District provide a residential placement and no IEP team had discussed it as a possible necessary option. There is simply no evidence in the record which supports the necessity of such a placement to provide FAPE. Thus, the very nature of Ascent, CEDU and Mount Bachelor as residential based behavioral programs further highlights that they were not appropriate private placements for which Plaintiffs could seek reimbursement.

/ / /

/ / /

/ / /

### B. Failure to Give Proper Notice Prohibits Reimbursement In This Case.

Plaintiffs argue that the notice requirement should not be applied in this case because "District personnel were well aware that Eric was truant and failing." (Opposition at 18:25.) As discussed in detail above, the evidence does not bear this out. In fact, the record shows that the District was properly intervening and the interventions were showing positive results with increased attendance and improving grades.

Plaintiffs also reference a request by Ms. Rodriguez that the District change Eric's placement in April 2003, disingenuously arguing that "the district's decision . . . to continue an IEP that was allowing Eric to fail, [was] a denial of a FAPE." (Opposition at 16:12-14; 18:25-19:1.) Rather, the evidence shows that the District quickly convened an IEP team meeting in response to Mrs. Rodriguez request, the IEP team addressed her concerns at the meeting and, ultimately, *Ms. Rodriguez agreed to continue Eric's placement* as outlined in his November 2002 IEP. [AR 249:4; 309:18-23; 462:11-463:15; 464:1-9; 1252; 1260-1262.]

Plaintiffs offer no legitimate argument or authority which would waive the notice requirement in this case. Thus, the District reasonably concluded that Plaintiff's withdrawal was a decision to privately place Eric and decline District services. At that time, Mrs. Rodriguez did not communicate dissatisfaction with the District program or her belief that the District was not providing FAPE. [AR 324:20-325:18.] Thus, the ALJ appropriately denied reimbursement in this case.

/ / /

/ / /

/ / /

## IV. CONCLUSION

Plaintiffs seek to have the District pay for a private school placement for which they gave absolutely no notice for over two years. They attempt to characterize the District's actions as abandonment when, in fact, the District provided Eric with the special education and related services required by his unique needs. This occurred until the moment that Ms. Rodriguez advised the District that Eric was going to attend school elsewhere. With no complaints about what the District was doing, with no notice of Eric's criminal proceedings and with no request that the District fund the private placements, Plaintiffs cannot now seek reimbursement in this case. Therefore, the District respectfully requests that this Court affirm the decision of ALJ Brown, on all issues, in favor of the District.

DATED: March 19, 2008                    FAGEN FRIEDMAN & FULFROST, LLP

By: /s/ Kimberly A Smith
Kimberly A. Smith
Attorneys for Defendant San Mateo Union High School District