United States District Court
For the Northern District of California

1

2

3                          UNITED STATES DISTRICT COURT

4                          NORTHERN DISTRICT OF CALIFORNIA

5

6

7   ERIC RODRIGUEZ and KIMBERLIN
    RODRIGUEZ,
8
                    Plaintiffs,              No. C 07-2360 PJH
9
            v.                               **ORDER GRANTING DEFENDANT'S
10                                           MOTION FOR SUMMARY JUDGMENT
    SAN MATEO UNION HIGH SCHOOL              AND DENYING PLAINTIFFS' MOTION
11  DISTRICT,                                FOR SUMMARY JUDGMENT**

12                  Defendant.
    _____/
13

14          The parties' cross-motions for summary judgment came on for hearing on April 9,

15  2008 before this court.  Plaintiffs, Eric Rodriguez and Kimberlin Rodriguez (collectively

16  "plaintiffs")[1], appeared through their counsel, Susan Foley.  Defendant San Mateo Union

17  High School District ("defendant" or "District") appeared through its counsel, Kimberly A.

18  Smith.  Having read all the papers submitted and carefully considered the relevant legal

19  authority, the court hereby GRANTS defendant's motion for summary judgment, and

20  DENIES plaintiffs' motion for summary judgment, for the reasons stated at the hearing, and

21  as follows.

22                              **BACKGROUND**

23          This case arises under the Individuals with Disabilities Education Act ("IDEA"), which

24  requires school districts to provide qualifying disabled children with a "free appropriate

25  public education" ("FAPE").  See 20 U.S.C. § 1412(1).

26  A.      Background Facts

27

28          [1]      The court's use herein of "plaintiff" in the singular is purely a stylistic choice, as
    all arguments are addressed to both plaintiffs and all rulings apply equally to both.

**United States District Court**
For the Northern District of California

1    Plaintiff Eric Rodriguez, who is currently twenty years old, was first made eligible as

2   a student with a Specific Learning Disability and a Speech Language Impairment, on

3   November 26, 1990, during his 3rd grade year.  See Administrative Record ("AR") at 240.

4   He remained eligible for special education under these two categories for the duration of

5   his school career, including the time periods that are relevant for purposes of this lawsuit,

6   namely 2003-2006.  During that relevant time period, plaintiff attended Hillsdale High

7   School as a freshman during the 2002-03 school year, and as a sophomore for part of the

8   2003-04 school year.  AR at 242, 251.

9    During plaintiff's 9th grade year at Hillsdale, in fall of 2002, defendant San Mateo

10   Union High School District conducted plaintiff's triennial review.  The triennial review refers

11   to the process of assessing and determining a student's eligibility and placement needs

12   once every three years.  AR 852.  As part of the 2002 triennial review, defendant conducted

13   several assessments of plaintiff.  These assessments included administration of the Wide

14   Range Achievement Test (WRAT"), a Bruckner diagnostic math test, and the Peabot

15   Individual Achievement Test ("PIAT").  AR at 587-88.  On the WRAT, plaintiff demonstrated

16   weakness in math and spelling, and high level decoding skills.  Id. at 589.  On the

17   Bruckner, plaintiff scored very well in addition and subtraction, but was weak in

18   multiplication and division.  AR at 591.  Plaintiff performed above grade level on the PIAT.

19   Id.

20    Plaintiff was also observed in the classroom by an educational assistant, in order to

21   assess how plaintiff interacted with others in the classroom environment.  The educational

22   assistant reported that plaintiff did not require assistance, was not easily distracted by

23   others, and did not distract others, although he at times appeared lethargic.  AR at 594-95.

24    Finally, a District psychologist reviewed plaintiff's student records and spoke with

25   plaintiff's teachers.  AR at 852-53.  Based on this review, she determined that no further

26   psychological testing of plaintiff was needed.  Id.  She sent plaintiff's mother, Kimberlin

27   Rodriguez, a confirming letter.  Id.  Ms. Rodriguez did not request further assessments.  Id.

28

2

1   at 855.

2       Following the completion of these triennial assessments, plaintiff's Individualized

3   Education Plan ("IEP") team convened on October 4, 2002 for the triennial review.  AR

4   1145-63.  Among others, plaintiff and his mother were present at the meeting, as well as

5   Ms. Pam Rianda, plaintiff's special education teacher, and Ms. Lisa Fox, plaintiff's speech

6   and language therapist.  AR 1148.  The IEP team noted plaintiff's areas of strength and

7   weakness, with plaintiff's written language and math skills included in the latter category.

8   AR 1145.  The team also noted that plaintiff was experiencing problems with punctuality

9   and attendance, and was demonstrating some "defiant behaviors" and a "level of anger that

10  contribute[d] to [plaintiff's] not being successful in school."  AR 1148, 1223-25.  The IEP

11  team recommended that plaintiff continue to be placed in a Special Day Class ("SDC") for 3

12  to 4 periods a day, and in order to address plaintiff's observed speech and language

13  problems, it recommended that plaintiff be given 3 periods per month of direct speech and

14  language therapy.  AR 1146-48.  The team also recommended that plaintiff participate in

15  Hillsdale's anger management program.  Id.  Ms. Rodriguez received notice of the

16  Procedural Safeguards, indicated she understood her rights, and consented to the IEP.  AR

17  306; 1148.

18      On November 12, 2002, plaintiff's IEP team convened again, in order to draft a

19  Behavior Support Plan ("BSP").  AR 1243-49.  Prior to the meeting, the defendant had

20  requested consent to conduct an environmental assessment, which examines a student's

21  behavior, discipline and school functioning.  AR 601-02; 1242.  The purpose of the

22  environmental assessment was to determine if plaintiff needed more support or services,

23  and to determine if plaintiff needed a BSP.  AR 602-03.  It appears that the environmental

24  assessment never took place.  Nonetheless, based on plaintiff's general behavior and

25  school performance, the IEP team developed a BSP on November 12.  AR 603-05, 1249.

26  The BSP noted that plaintiff was exhibiting "inappropriate classroom behavior" that was

27  impeding plaintiff's learning, and that the behavior was being caused by "anger,"

28

United States District Court

For the Northern District of California

1  "frustration," and a failure of success.  AR 1249.  To that end, the BSP outlined certain

2  interventions that were to be undertaken by defendant in an effort to modify plaintiff's

3  behavior.  The interventions consisted of specific teaching strategies, positive

4  reinforcement, one-to-one assistance when necessary, a tutorial study period, anger

5  management counseling, and weekly progress reports.  AR 604-05; 1170; 1249.  The BSP

6  did not, however, address any truancy issues that plaintiff was having, which had been

7  remarked upon earlier by the School Safety Advocate.  AR 1240.

8      Plaintiff and his mother participated in the November 2002 IEP meeting, received the

9  Notice of Procedural Safeguards, indicated she understood her rights, and consented to

10  the IEP.  AR 308; 1246.  Defendant then implemented the BSP.  AR 605.  While plaintiff

11  continued to receive disciplinary referrals and suspensions after the creation of the BSP,

12  they were less frequent than the disciplinary referrals that plaintiff received prior to the

13  implementation of the BSP.  AR 652; 977.

14      Several months later, on April 8, 2003, Ms. Rodriguez wrote to Marvin Meyers, the

15  District's Director of Special Education, and requested a change of placement for her son,

16  due to plaintiff's continuing behavior problems and his inability to benefit in his current

17  placement.  AR 248-49; 1252.  In response, an IEP team meeting was thereafter held on

18  May 1, 2003.  AR 1257-66.  As the reports submitted in connection with the May 2003 IEP

19  stated, plaintiff was continuing to exhibit negative behaviors, including tardiness, defiance

20  of authority, and use of profanity, among other things.  AR 1265.  Plaintiff's behavior was

21  described as "totally distracting to the class and instruction."  Id.  Nonetheless, based on

22  the information discussed with plaintiff's teachers at the IEP team meeting, plaintiff's

23  mother "rescinded her request for change in placement," and the May 2003 IEP resulted in

24  no changes to the October 4, 2002 and November 12, 2002 IEPs that were already in

25  place.  AR 249; 1258; 1262.

26      Shortly thereafter, on May 13, 2003, plaintiff was arrested for stealing beer from a

27  San Mateo supermarket during school hours.  AR 995; 1285.  Defendant District was not

28

United States District Court

For the Northern District of California

notified of plaintiff's arrest, however, or of any subsequent juvenile court proceedings.

On November 13, 2003, plaintiff's IEP team once again convened, this time for plaintiff's annual review. AR 1268-81. The IEP team noted that plaintiff's "greatest weakness [was] his truancy." AR 1274. The team further noted that it was difficult to gauge whether plaintiff's current placement was effective, due to excessive absences on his part. AR 695; 974. In the area of speech and language, plaintiff's truancy prevented the IEP team from formally assessing plaintiff. However, the speech and language pathologist, Ms. Fox, was also plaintiff's treating therapist for the past two years, and therefore was able to review records and reflect on her observations of plaintiff during therapy sessions, in order to identify speech and language needs, and draft accurate present levels of performance. AR 695; 974; 1279. Ms. Fox also recommended modifying plaintiff's speech and language goals, and changing to consultation speech services, because of plaintiff's frequent truancy. AR 690-91. Specifically, Ms. Fox was concerned about the effect of pulling plaintiff out of his academic classes for speech, given his truancy and poor grades. By switching to speech and language services on a consultation basis, the idea was to afford plaintiff a chance to improve his attendance. Id.

In the area of academics, the November 2003 IEP team – which included plaintiff's general education and special education teachers – developed accurate present levels of performance based on current observations of plaintiff in the classroom. AR 616-22; 969; 971. The team noted that plaintiff's strengths included reading comprehension, vocabulary, and creative writing. Weaknesses included attendance, expository writing, and mathematics. AR 743-45. The IEP team recommended placement in SDC for three periods per day. AR 968.

The IEP team also found that the November 2002 BSP was no longer appropriate, as plaintiff's primary struggle was now with truancy. Accordingly, the IEP team developed a new BSP at the November 2003 meeting. This revised BSP provided for daily planner checks, one-one-one assistance during tutorial at least twice a week, weekly progress

United States District Court

For the Northern District of California

1    reports, positive progress reports sent home, and counseling from the District probation

2    officer to discuss the legal ramifications of plaintiff's truancy.  AR 748; 750; 975.  The

3    November 2003 BSP also required plaintiff's special education teacher to personally call

4    plaintiff on his cell phone when he did not appear in class, or to call Ms. Rodriguez.  AR

5    751.  Plaintiff was not referred to the County Mental Health Department.  Ms. Rodriguez

6    participated in the November 2003 IEP team meeting, received the notice of procedural

7    safeguards, and consented to the IEP.  AR 315-16.

8        In the first two months following implementation of the BSP, between November

9    2003 and January 2004, plaintiff's grades improved.  AR 752.  In December 2003 and

10   January through February 2004, however, plaintiff received suspensions for truancy from

11   school, and for disrupting activities and defying school policies.  AR 1237-38; 1250.

12       On March 4, 2004, plaintiff's May 2003 arrest was adjudicated by the Alameda

13   County Juvenile Court.  The court adjudged plaintiff a ward of the court and ordered plaintiff

14   to serve 60 days in juvenile hall.  AR 1000.  However, as an alternative to this sentence,

15   the court approved plaintiff's enrollment in a wilderness program called the Rocky Mountain

16   Academy, in Colorado – at his parent's expense.  AR 998-99; 1287.  Ultimately, Ms.

17   Rodriguez enrolled plaintiff in the Ascent program in Idaho, a six week wilderness

18   intervention program.  AR 281; 380; 2006.  Plaintiff began the program at some point

19   between March 18 and March 21, 2004.  AR 998; 1002.  On March 22, 2004, Ms.

20   Rodriguez informed plaintiff's special education teacher, Ms. Hahn, that plaintiff was

21   attending the Ascent program.  AR 837.  She made no request that the District fund the

22   program.  AR 325-26.

23       Plaintiff attended Ascent from March 22, 2004 through May 5, 2004.  AR 998; 1411.

24   While there, he made progress with certain maladaptive behaviors.  AR 384-85.  Upon his

25   completion of the program at Ascent, it was recommended by Ascent staff that plaintiff

26   attend a residential CEDU High School in San Bernardino.  AR 998; 1301.  On May 6,

27   2004, the Juvenile Court adopted this recommendation, and upon the court's order, plaintiff

28

United States District Court

For the Northern District of California

1    attended the CEDU High School until its closure in March 2005.  AR 997; 1006; 1333.

2    While at CEDU, plaintiff earned a 2.60 GPA.  AR 1335.  After the CEDU school's closure,

3    plaintiff was sent home while an appropriate school placement could be located.  Plaintiff's

4    probation officer noted in her report that no public or private schools met plaintiff's needs in

5    the surrounding area.  AR 1296.  Court records indicate that, after weighing the options,

6    plaintiff and his parents concluded that the Mt. Bachelor Academy in Oregon was the best

7    placement, and that the court allowed plaintiff to be placed there at the parents' expense.

8    AR 1006; 1296; 1304.

9        Plaintiff enrolled at Mt. Bachelor on May 11, 2005, where he finally graduated with a

10    High School Diploma in June 2006.  AR 1401.  While at Mt. Bachelor, plaintiff earned As,

11    Bs, and Cs, although he also continued to demonstrate behaviors such as truancy, low

12    grades, refusal to participate in class, and alcohol and tobacco abuse.  AR 1110-11; 1113;

13    1115; 1360-67; 1370-71- 1383-89; 1398-99; 1400; 1404.

14        On July 20, 2006, Ms. Rodriguez filed a request for due process, seeking

15    reimbursement for plaintiff's private placements.

16    B.    The ALJ Decision

17        The due process hearing occurred on December 18-20, 2006.  See AR 228; 2106.

18    The Administrative Law Judge ("ALJ"), Suzanne Brown, considered the following issues at

19    the hearing:

20        1.    Did the District deny plaintiff a FAPE from July 19, 2003 through the 2005-06

21    school year by failing to: (a) assess plaintiff's behavioral needs; (b) meet plaintiff's unique

22    needs for behavioral and mental health services;

23        2.    Did the District deny plaintiff a FAPE from November 12, 2003, through the

24    2005-06 school year by failing to: (a) have a school psychologist attend the November 13,

25    2003 IEP team meeting; (b) assess plaintiff in the areas of behavior, speech and language,

26    and academics; (c) provide adequate present levels of performance in the November 13,

27    2003 IEP in the areas of behavior, speech and language, and academics, which denied

28

United States District Court

For the Northern District of California

1  plaintiff educational opportunity and his parent an opportunity to participate in the decision-

2  making process; (d) include adequate goals in the November 13, 2003 IEP in the areas of

3  behavior, speech and language, academics, and mental health, which denied plaintiff

4  educational opportunity and his parent an opportunity to participate in the decision-making

5  process; and (e) meet plaintiff's unique speech and language needs in the areas of

6  dysfluency, and expressive receptive and pragmatic language skills; and

7      3.    If the District denied plaintiff a FAPE, is Ms. Rodriguez entitled to

8  reimbursement for private school placements from March 2004 to June 2006, and related

9  transportation costs.

10     ALJ Brown issued a decision on February 8, 2007.  With respect to the first issue,

11  the ALJ concluded that plaintiff failed to demonstrate that the District denied him a FAPE

12  from July 19, 2003 through the 2005-06 school year. AR 158.  Specifically, the ALJ found

13  that the District had not failed to assess plaintiff's behavioral needs, and furthermore did not

14  fail to assess plaintiff's unique behavioral and mental health needs. Id.  Similarly, on the

15  second issue, the ALJ also found that plaintiff had failed to establish that the District denied

16  him a FAPE from November 12, 2003 through the 2005-06 school year, and made specific

17  findings with respect to each of the sub-issues presented.  AR 158-59.  Finally, the ALJ

18  found that, with respect to the last issue, plaintiff's mother is not entitled to reimbursement

19  for the private school placements or related transportation costs.  AR 159.

20     Plaintiff now seeks reversal of the ALJ's decision, reimbursement for educational

21  expenses, and attorneys' fees and costs.  Defendant, by contrast, seeks an order affirming

22  the findings of the ALJ in their entirety.

**DISCUSSION**

23

24  A.    Legal Standards

25     1.    Summary Judgment

26     Summary judgment shall be granted if "the pleadings, depositions, answers to

27  interrogatories, and admissions on file, together with the affidavits, if any, show that there is

28

United States District Court

For the Northern District of California

1  no genuine issue as to any material fact and that the moving party is entitled to judgment

2  as a matter of law." FRCP 56(c). Material facts are those which may affect the outcome of

3  the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to

4  a material fact is genuine if there is sufficient evidence for a reasonable jury to return a

5  verdict for the nonmoving party. Id. The court must view the facts in the light most

6  favorable to the non-moving party and give it the benefit of all reasonable inferences to be

7  drawn from those facts. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,

8  587 (1986).

9        2.    IDEA Claims

10       The IDEA requires school districts to provide disabled children with a "free

11  appropriate public education" ("FAPE"). 20 U.S.C. § 1412(1). The education to which

12  access is provided must be "reasonably calculated to enable the child to receive

13  educational benefits." Bd. of Educ. of Hendrick Hudson Central Sch. Dist. Westchester

14  County v. Rowley, 458 U.S. 176, 207 (1982). To that end, the IDEA requires school

15  districts to create an "individualized education program" (IEP) for each disabled child. Id. It

16  further authorizes parents challenging their child's IEP to request an "impartial due process

17  hearing." See id. at § 1415(f). The party that has requested the hearing bears the burden

18  of proof at the hearing. See Schaffer v. Weast, 126 S.Ct. 528, 537 (2005).

19       A party aggrieved by the findings and decision made in a state administrative due

20  process hearing has the right to bring an original civil action in a state court of competent

21  jurisdiction or in federal district court in order to secure review of the disputed findings and

22  decisions. See 20 U.S.C. § 1415(i)(2). The party challenging the decision bears the

23  burden of persuasion on its claim. See Clyde K. v. Puyallup Sch. Dist. No. 3, 35 F.3d 1396,

24  1399 (9th Cir. 2004). In reviewing the administrative decision, the district court "shall

25  receive the records of the administrative proceedings; shall hear additional evidence at the

26  request of a party; and basing its decision on the preponderance of the evidence, shall

27  grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(B).

28

**United States District Court**

For the Northern District of California

1        Judicial review of state administrative proceedings under the IDEA is less deferential

2   than the review of other agency actions.  See Ojai Unified School District v. Jackson, 4

3   F.3d 1467, 1471 (9th Cir. 1993).  However, "because Congress intended states to have the

4   primary responsibility for formulating each individual child's education, [courts] must defer

5   to their 'specialized knowledge and experience' by giving 'due weight' to the decisions of

6   the states' administrative bodies."  Amanda J. Ex rel. Annette J. v. Clark County Sch. Dist.,

7   267 F.3d 877, 888 (9th Cir. 2001).  This review requires the district court to carefully

8   consider the administrative agency's findings.  See Susan N. v. Wilson Sch. Dist., 70 F.3d

9   751, 758 (3d. Cir. 1995).  "The amount of deference accorded the hearing officer's findings

10  increases where they are thorough and careful."  Capistrano Unified Sch. Dist. v.

11  Wartenberg, 59 F.3d 884, 891 (9th Cir. 1995).  After such consideration, "the court is free to

12  accept or reject the findings in part or in whole."  Susan N., 70 F.3d at 758.  When the court

13  has before it all the evidence regarding the disputed issues, it may make a final judgment in

14  what "is not a true summary judgment procedure [but] a bench trial based on a stipulated

15  record."  Ojai, 4 F.3d at 1472.

16  B.    The Parties' Cross-Motions for Summary Judgment

17        The parties' cross-motions raise the following issues for resolution: (1) whether the

18  ALJ properly concluded that the District did not deny plaintiff a FAPE from July 19, 2003

19  through the 2005-06 school year; (2) whether the ALJ properly concluded that the District

20  did not deny plaintiff a FAPE from November 13, 2003, through the 2005-06 school year;

21  and (3) whether the ALJ properly conclude that Ms. Rodriguez was not entitled to reim-

22  bursement for private school placements from March 2004 to June 2006.

23        Preliminarily, however, the court notes that in addition to these issues, plaintiffs raise

24  others that defendant has correctly noted are time-barred.  For example, plaintiffs argue in

25  their papers that the November 2002 IEP that was drafted constituted denial of a FAPE,[2]

26  _____

27        [2]    This claim is distinguishable from plaintiff's claim that, because the November
    12, 2002 IEP was not based on an Environmental Assessment, the BSP that was developed
28  and which was in operation from July 2003 to November 2003, reflected a denial of a FAPE.

United States District Court

For the Northern District of California

1   and that a FAPE was further denied when defendant District failed to include necessary

2   members at the November 12, 2002 and May 1, 2003 IEP meetings.  See Pl. Mot. Summ.

3   Judgm. at 22:24-23:10; 25:24-26:19.  Neither party disputes, however, that plaintiff's

4   claims, which were administratively filed on July 20, 2006, are subject to a three year

5   statute of limitations.  See Cal. Educ. Code § 56505(l), eff. October 7, 2005 to October 8,

6   2006 (amended by Cal. Educ. Code § 56505(l), eff. October 9, 2006).  Accordingly, plaintiff

7   cannot assert any claims arising out of conduct occurring prior to July 20, 2003, and his

8   claims relating to defendant's denial of FAPE in connection with the November 12, 2002

9   IEP and IEP meeting, and the May 1, 2003 IEP meeting, are barred.[3]  Moreover, because

10  the ALJ did not have occasion to pass upon these claims, they are furthermore barred

11  because plaintiff failed to exhaust all administrative remedies in connection with the claims.

12       The court now turns to the substantive issues before it.

13       1.    Whether the District denied plaintiff a FAPE from July 19, 2003 through the

14             2005-06 school year

15  Plaintiff contends that the District denied him a FAPE for the above-referenced

16  period when it (a) failed to properly assess his behavioral needs; and (b) failed to meet his

17  behavioral needs.  With respect to the former, plaintiff argues that the District failed to

18  conduct an environmental assessment in connection with the November 12, 2002 IEP

19  meeting, leading to an ineffective BSP that failed to meet plaintiff's needs, and furthermore,

20  that the District failed to offer a Behavior Intervention Plan.[4]  See Pl. Mot. Summ. Judgment

21  at 21-23.  With respect to the latter, plaintiff argues that the District failed to meet his unique

22  behavioral needs when it failed to refer plaintiff for County Mental Health Services, despite

---

25  [3]    The ALJ noted July 19, 2006 as the operative date of filing for statute of
26  limitations purposes.

27  [4]    A Behavior Intervention Plan is usually developed following a Functional Analysis
    Assessment ("FAA") or Functional Behavioral Assessment ("FBA").  See Cal. Code. Regs. Tit.
28  5, § 3001 (aa, f).

**United States District Court**
For the Northern District of California

1   the fact that plaintiff's behavior, grades, and attendance record mandated as much.  See id.

2   at 25; see also Pl. Opp. to Summ. Judgm. at 8-10.  For the reasons that follow, however,

3   the court finds that plaintiff's arguments are without merit.

4       a.  District's failure to assess plaintiff's behavioral needs

5      The issue before the court is whether the District failed to conduct an environmental

6   assessment and a FAA or FBA leading to a Behavior Intervention Plan, and if so, whether

7   such failure constituted a denial of a FAPE.  In the underlying administrative decision, the

8   ALJ found that it was unclear whether the District conducted an environmental assessment

9   in November 2002, as witness testimony on the matter was not conclusive.  However, the

10  ALJ found that the team members present at the November 2002 IEP did identify plaintiff's

11  behavior problems and adopted a BSP to deal with those problems, which BSP actually

12  resulted in a decrease in frequency of those behavior problems.  AR 149.  As for whether

13  defendant District was obligated to provide a FAA or FBA, the ALJ found that plaintiff's

14  behavior, as noted in the IEP meeting notes, did not constitute a "serious behavior

15  problem" requiring an FAA, which would have resulted in a Behavior Intervention Plan.

16  While acknowledging that plaintiff's truancy problem did become a behavior problem in fall

17  of 2003, the ALJ concluded that this was dealt with by defendant District in the November

18  2003 IEP and BSP.  Id.

19     Plaintiff has not pointed to any evidentiary dispute that demonstrates error on the

20  ALJ's part.  First, even assuming that the District failed to undertake an environmental

21  assessment before the November 2002 BSP was developed and implemented, this failure

22  did not constitute a denial of a FAPE.  Procedural violations – such as the failure to conduct

23  the environmental assessment – only constitute a denial of a FAPE if the violation caused a

24  loss of educational opportunity to the student or significantly infringed on the parents' right

25  to participate in the IEP process.  See, e.g., R.B., ex rel. F.B.v. Napa Valley Unified School

26  Dist., 496 F.3d 932, 938 (9th Cir. 2007).  Here, the BSP that resulted from the November

27  IEP was intended to address plaintiff's problems with attendance, punctuality, motivation,

28

**United States District Court**
For the Northern District of California

1   anger, and defiant behaviors.  AR 604-05; 1170; 1249.  And, as the ALJ found, the BSP

2   actually succeeded in decreasing plaintiff's disruptive behaviors by the beginning of the

3   2003-04 school year.  AR 652; 977.  Moreover, plaintiff and his mother were present at the

4   November 2002 IEP team meeting at which the BSP was developed.  Plaintiff's mother did

5   not object, and even consented to the November 2002 IEP and BSP.  AR 306.

6   Accordingly, even if the District failed to conduct an environmental assessment in

7   connection with the November 2002 IEP, this did not rise to the level of a denial of a FAPE.

8        Plaintiff asserts that his behavior – specifically, plaintiff's truant behaviors –

9   nonetheless deteriorated following the November 2002 IEP, such that plaintiff's truancy

10  became the target behavior by the time the November 13, 2003 IEP was prepared and

11  conducted.  Yet the District continued in its failure to conduct proper assessments, resulting

12  in an ineffective November 2003 BSP that failed to properly address plaintiff's truancy, and

13  therefore also denied plaintiff a FAPE.  While plaintiff contends that his truant behaviors

14  were ignored, the testimony of certain November 2003 IEP team members was that the

15  November 2003 BSP was developed with the express purpose of targeting plaintiff's truant

16  behaviors, and that this focus had shifted from the prior BSP entered in November 2002.

17  AR 748.  The November 2003 IEP also expressly noted that plaintiff's "greatest weakness"

18  was truancy, and set forth increased attendance as a goal and objective.  AR 966, 969,

19  971.  To that end, the revised BSP that was developed at the November 2003 IEP team

20  meeting set forth several proposed adjustments in plaintiff's educational services in order to

21  address the truancy issues.  Specifically, the revised BSP required daily planner checks,

22  one on one assistance, referral to a truancy probation officer, and phone calls to plaintiff

23  from plaintiff's teacher and mother when he was not in attendance at school.  AR 748-51;

24  975.  According to testimony given at the hearing, implementation of this revised BSP did,

25  in fact, help improve plaintiff's attendance after it was implemented.  AR 752.  Thus, not

26  only was the BSP adopted in November 2003 tailored to meet plaintiff's unique behavioral

27  needs in the area of truancy – the primary target behavior identified at the time – but the

28

**United States District Court**
For the Northern District of California

1    BSP also resulted in some improvement.  Accordingly, there is no evidence that a failure to

2    properly assess plaintiff's needs in connection with the November 2003 IEP and

3    subsequent BSP resulted in a loss of educational opportunity for plaintiff, or the denial of a

4    FAPE.

5         Finally, with respect to plaintiff's contention that the District's wrongfully failed to

6    conduct an FAA or FBA and to implement a Behavior Intervention Plan, the ALJ properly

7    concluded that no FAA or FBA – and therefore no Behavior Intervention Plan – was

8    necessary.  California law requires that a FAA be undertaken whenever a student develops

9    a "serious behavior problem," which is defined as a student's actions exhibiting self-

10   injurious, or assaultive tendencies, or a student's actions in causing serious property

11   damage or other pervasive and maladaptive tendencies.  See Cal Code Regs., tit. 5 §

12   3001.  Plaintiff, however, has not pointed to any affirmative evidence in the record that

13   demonstrates, prior to November 2002, either plaintiff's self-injurious or assaultive

14   tendencies, or plaintiff's actions causing serious property damage, or defendant District's

15   knowledge of such.  Accordingly, there is no evidence that supports the existence of a

16   "serious behavior problem" that would have warranted a FAA, FBA, or Behavior

17   Intervention Plan.

18         b.    District's failure to meet plaintiff's behavioral needs

19   Plaintiff also asserts that the District denied him a FAPE by refusing to refer him for

20   County Mental Health Services.  The ALJ found that no referral to Mental Health Services

21   was necessary.  AR 149-51.  This was based on the finding that the only significant,

22   frequent behavior preventing plaintiff from benefitting from his education – and possibly

23   triggering a mental health referral – was truancy.  AR 149.  Yet the ALJ found that the

24   District attempted to address the truancy behavior through the November 2003 revised

25   BSP, which in part referred plaintiff to a truancy officer.  AR 150.  This, combined with the

26   testimony of plaintiff's teachers stating that they did not think plaintiff exhibited a need for

27   mental health services, led the ALJ to conclude that the District's failure to refer plaintiff did

28

United States District Court

For the Northern District of California

1    not constitute a denial of FAPE.[5]  AR 151.

2         In general, the ALJ correctly noted that a local educational agency ("LEA") such as

3    defendant District may refer a student for community mental health services when the

4    student has emotional or behavioral characteristics that: (1) are observed by qualified

5    educational staff in educational and other settings, as appropriate; (2) impede the pupil

6    from benefitting from educational services; (3) are significant, as indicated by their rate of

7    occurrence and intensity; (4) are associated with a condition that cannot be described

8    solely as a social maladjustment as demonstrated by deliberate noncompliance with

9    accepted social rules, a demonstrated ability to control unacceptable behavior and the

10   absence of a treatable mental disorder; and (5) are associated with a condition that cannot

11   be described solely as a temporary adjustment problem that can be resolved with less than

12   three months of school counseling.  See AR 157; see also Cal. Gov't Code § 7576 (b)(3).

13   The LEA must also first have provided appropriate services, however, such as counseling

14   or behavioral intervention, and the IEP team must have determined that the services do not

15   meet the student's individual needs.  See id. at § 7576 (b)(5).

16        Here, plaintiff does not actually identify the emotional or behavioral characteristic

17   that he contends warranted a referral to mental health service.  Plaintiff states only that the

18   District should have made such a referral "based on [plaintiff's] behavior and the District's

19   own failed BSPs of November 2002 and November 2003," and that plaintiff "failed his

20   classes, became a habitual truant and had numerous referrals for discipline."  See Pl. Opp.

21   to Summ. Judgm. at 9.  Even assuming, however, that truancy, failed classes, and

22   discipline referrals constituted qualifying emotional and/or behavioral characteristics as

23   outlined above, it has not been demonstrated that the District attempted to provide services

24   that were unable to meet plaintiff's individual needs.  Indeed, as discussed above, the

25

26        [5]    Furthermore, the ALJ provided sound reasons for discrediting plaintiff's
     witnesses, who testified that plaintiff needed mental health services while at Hillsdale: those
27   witnesses were not familiar with plaintiff's placement or services at Hillsdale, and two of them
     worked with plaintiff more than two years after plaintiff left Hillsdale. AR 151. Accordingly,
28   their testimony was speculative.

United States District Court

For the Northern District of California

1   evidence demonstrates the opposite – i.e., that the November 2002 and November 2003

2   BSPs actually *did* succeed in improving the maladaptive behaviors that were noted in

3   plaintiff's respective IEPs.  Furthermore, a Behavior Intervention Plan was not mandated,

4   based on the record presently before the court.

5       In sum, the ALJ's finding that no referral to County Mental Health Services was

6   required, is supported by the record.  See also AR 150-51; 375-394; 530-32; 553-54; 750-

7   52; 760-63; 965-975; 989.

8       The court therefore affirms the ALJ's findings and conclusions with respect to the

9   first issue before the court – i.e., whether the District denied plaintiff a FAPE from July 19,

10  2003 through the 2005-06 school year, by failing to properly assess and/or meet plaintiff's

11  behavioral needs.  Defendant's motion for summary judgment as to this issue is

12  accordingly GRANTED, and plaintiffs' cross-motion for summary judgment on the same

13  issue is DENIED.

14      2.      Whether the District denied plaintiff a FAPE from November 13, 2003 through

15          the 2005-06 school year[6]

16  Plaintiff contends that the District denied him a FAPE for the above-referenced

17  period for several reasons.  Each issue considered by the ALJ, is addressed in turn.

18      a.      failure to have a school psychologist attend the November 13, 2003

19          IEP team meeting

20  The November 2003 IEP meeting consisted of: general education teacher Ms.

21  Rianda, special education teacher Ms. Hahn, speech and language pathologist Ms. Fox,

22  plaintiff, and plaintiff's mother.  AR 151, 963-975.  Plaintiff, however, contends that the

23  District violated procedure and denied plaintiff a FAPE, because it did not have a school

24  psychologist attend the meeting.

25

26      [6]     Defendants point out in their motion for summary judgment that the ALJ's opinion
    sometimes states that the November 13, 2003 IEP meeting occurred on November 12, 2003.
27  This appears to be a confusion with the November 12, 2002 IEP meeting.  Accordingly, all
    references herein are to the November 13, 2003 IEP meeting, notwithstanding the ALJ's
28  statement to the contrary.

United States District Court

For the Northern District of California

1    The federal IDEA and the California Education Code require that IEP team meetings

2   include: parents, at least one regular education teacher, at least one special education

3   teacher, a representative of the public agency who is qualified to provide or supervise the

4   provision of instruction designed to meet the needs of children with disabilities, an individual

5   who can interpret the implications of evaluation results, and the child if appropriate.  The

6   last individual may already be a member of the team.  See 34 C.F.R. § 300.344(a)(1999);

7   Cal. Educ. Code § 5634.

8    The ALJ noted that California law provides that where a student is suspected of

9   having a learning disability, at least one member of the team shall be qualified to conduct

10  individual diagnostic examinations of children, such as a school psychologist, speech-

11  language pathologist, or remedial reading teacher.  The Code of Federal Regulations

12  further clarifies that a school psychologist's attendance is required only when determining

13  eligibility under the learning disability category.  Accordingly, since plaintiff here had already

14  had his eligibility under the law determined, the ALJ concluded that no school psychologist

15  was required to attend the November 2002 IEP meeting.  Furthermore, the ALJ noted that

16  in addition to the attendance of speech and language pathologist Ms. Fox at the November

17  2002 IEP meeting, Ms. Rianda and Ms. Hahn both gave testimony at the hearing that their

18  education and training included training in drafting BSPs.  Accordingly, the ALJ concluded

19  that while helpful, a school psychologist was not required by either state or federal law.

20    Not only are the ALJ's observations with respect to the law thorough and accurate,

21  but plaintiff has not introduced any law or evidence here that contradicts these conclusions.

22  Accordingly, the court concludes that the ALJ was correct in deciding that the District did

23  not deny plaintiff a FAPE by not having a school psychologist attend the November 2003

24  IEP meeting.

25              b.    failure to assess plaintiff in the areas of behavior, speech and

26                   language, and academics

27    The ALJ concluded that the District did not deny plaintiff a FAPE by failing to assess

28

17

**United States District Court**
For the Northern District of California

1   plaintiff in the areas of behavior, speech and language, and academics. With respect to

2   behavior, and as mentioned above, the ALJ concluded that the District assessed plaintiff's

3   behavioral needs when it modified plaintiff's BSP in November 2003. With respect to

4   speech and language, as well as academics, the ALJ concluded that the District was

5   required by law to assess plaintiff in all areas related to his disability at least once every

6   three years, unless the parent and the school agree in writing that a reassessment is

7   unnecessary. AR 152. And since the District conducted its triennial assessment of plaintiff

8   in fall 2002 with three diagnostic tests – the WRAT, Bruckner math test, and the PIAT –

9   there was no need to reassess plaintiff between fall of 2002 and March of 2004, when

10  plaintiff left Hillsdale. AR 152, 587. Furthermore, the ALJ noted that plaintiff had

11  introduced no evidence warranting reassessment in November 2003, nor did the record

12  reflect that plaintiff's mother had requested reassessment. AR 152.

13      As is repeatedly the case in the motion papers, plaintiff has failed to present any

14  evidence that presents a dispute of fact on the relevant issues. Plaintiff mentions almost no

15  evidence[7] relating to the District's purported failure to assess plaintiff academically, and as

16  for the District's speech and language assessment, plaintiff also fails to point to any

17  evidence that would indicate a failure to assess plaintiff as required by law. Moreover,

18  plaintiff's mother never requested reassessment as to the District's speech and language

19  assessments. AR 316.

20      In sum, there is no dispute present that calls into question the ALJ's conclusion that

21  the district properly assessed plaintiff's behavioral, academic, and speech and language

22  needs from July 19, 2003 through the 2005-06 school year.

23          c.      failure to provide adequate present levels of performance in the

24

25      [7]      Plaintiff does contend that the District failed to offer plaintiff direct speech
26  language therapy when it switched to consultation services as part of the November 2003 IEP.
    However, this is more properly construed as an argument that defendant failed to provide
27  proper services, rather than an argument relating to defendant's failure to *assess* plaintiff, and
    is addressed below, in connection with defendant's purported failure to meet plaintiff's unique
28  speech and language needs.

United States District Court

For the Northern District of California

1    November 13, 2003 IEP in the areas of behavior, speech and

2    language, and academics

3    Plaintiff also asserts that the District failed to provide adequate present levels of

4    performance in the November 2003 IEP in the areas of behavior, speech and language,

5    and academics.  As defendants acknowledge, the IDEA requires that a student's annual

6    IEP contain a statement of the student's present levels of academic achievement and

7    performance, including the manner in which the student's disability affects his or her

8    involvement and progress in the general education curriculum.  See 20 U.S.C. §

9    1414(d)(1)(A)(i); Cal. Educ. Code § 56345(a)(1)(A).

10    The ALJ noted that the November 2003 IEP contained limited information about

11    plaintiff's present levels of performance.  While it listed some information, such as plaintiff's

12    strengths and preferences, his scores on some testing, and his areas of need, the IEP did

13    not contain specific information regarding academic assessments, or regarding the goals

14    and objectives for plaintiff.  AR 152.  This was because of plaintiff's excessive truancy.  The

15    IEP states: "current testing has not been performed due to excessive absences...".  Id.; see

16    also AR 969.  Nor did the November 2003 IEP contain any "baseline" data from which

17    plaintiff's student performance may be assessed.  AR 152.  The ALJ found, however, that

18    because plaintiff's teachers and speech therapist established that they were familiar with

19    plaintiff's needs from working with him in the past and seeing him occasionally in fall 2003,

20    they were able to make knowledgeable recommendations about plaintiff's IEP program.  Id.

21    Now, plaintiff contends that the ALJ's conclusion was error, because the District's

22    failure to assess his present academic levels made it (a) impossible to determine if the

23    goals proposed adequately addressed plaintiff's academic needs, and (b) made it

24    impossible for Ms. Rodriguez to determine if the District's offered program met plaintiff's

25    needs.

26    These arguments fail to persuade.  As to the former, while true that the November

27    2003 IEP expressly stated that current testing could not be performed due to "excessive

28

19

United States District Court

For the Northern District of California

absences," the IEP does contain descriptions of plaintiff's performance to the extent possible, including notations regarding plaintiff's attendance problems, failure to turn in paperwork, GPA score, and the credits required to graduate.  AR 1274.  The IEP also states that until plaintiff "attends school regularly, the current placement will continue to be the least restrictive and most appropriate environment for [plaintiff.]"  Id.  Moreover, the IEP that was left in place was designed, as the ALJ found, by teachers with knowledge of plaintiff's needs and past performance, and the BSP that was newly revised at the November 2003 IEP meeting was specifically done with the purpose of aiding the truancy problems so that plaintiff could get back on track academically.  Therefore, even though the District was admittedly unable to assess plaintiff's present levels of performance thoroughly, the District was still able to make knowledgeable recommendations regarding plaintiff's proposed IEP, and to recommend a BSP that would target plaintiff's truancy and allow him to benefit from his education.

As for plaintiff's argument that the lack of present levels of performance made it impossible for Ms. Rodriguez to participate and determine whether the District's educational offerings met plaintiff's needs, plaintiff does not dispute that Ms. Rodriguez was present at the November 2003 IEP team meeting, or that Ms. Rodriguez subsequently consented to the November 2003 IEP without raising any objections, either at the meeting or afterwards.  AR 315-16.  Nor does plaintiff submit any legal authority that suggests that a parent's lack of meaningful participation in the IEP process occurs under factual circumstances similar to the case at bar.

In sum, to the extent that the District failed to include present levels of performance in connection with the November 13, 2003 IEP, it did not constitute a denial of a FAPE.

> d.    failure to include adequate goals in the November 13, 2003 IEP in the
>        areas of behavior, speech and language, academics, and mental
>        health

This issue is related to the preceding issue.  Plaintiff contends that, since the District

United States District Court

For the Northern District of California

1   failed to ascertain plaintiff's present levels of performance in connection with the November

2   2003 IEP, then the District also failed to provide adequate goals, as required by IDEA.  See

3   20 U.S.C. § 1414(d)(1)(A)(i)(II); Cal. Educ. Code § 56345(a)(2).  For the following reasons,

4   plaintiff is incorrect.

5   　　　　First, as discussed above, the District's failure to include present levels of

6   performance did not constitute a denial of FAPE.  Accordingly, plaintiff's argument that the

7   same led to a failure to provide adequate goals, fails.  Second, the evidence demonstrates

8   that the November 2003 IEP *did* include goals that were adequately tailored to plaintiff's

9   needs.  Specifically, the IEP included a statement of goals related to academic

10  performance (through improved attendance), literacy skills (through the writing of

11  expository essays), in math skills (through completion of math homework), and mental

12  health skills (BSP stated goal of "cooperative and positive attendance").  AR 966-67; 976.

13  Plaintiff, moreover, does not dispute that these goals were included.

14  　　　　Accordingly, the ALJ's conclusion that the District's purported failure to include

15  adequate goals in the November 13, 2003 IEP in the areas of behavior, speech and

16  language, academics, and mental health did *not* constitute a denial of a FAPE, is well-

17  founded.  The court hereby affirms the ALJ's decision in this regard.

18  　　　　　　　　e.　　　　failure to meet plaintiff's unique speech and language needs in the

19  　　　　　　　　　　　　areas of dysfluency, and expressive receptive and pragmatic language

20  　　　　　　　　　　　　skills

21  　　　　Finally, plaintiff contends that the District denied him a FAPE when it failed to meet

22  his unique speech and language needs, and expressive receptive and pragmatic language

23  skills.  Specifically, plaintiff asserts that the District failed to do so when it adjusted plaintiff's

24  direct speech therapy to a consultation based service as part of the November 2003 IEP.

25  　　　　Plaintiff was receiving direct speech language therapy until the November 2003 IEP.

26  At the November 2003 IEP, plaintiff's teachers determined that the best therapy would be

27  via consultation services.  This was in part because of plaintiff's truancy.  As plaintiff's

28

United States District Court

For the Northern District of California

1   speech and language therapist testified, although she was reluctant to switch plaintiff to

2   consultation services, she felt that "there was a power struggle that was going to get set up

3   around speech." AR 690-91. She wanted speech "to be the place [plaintiff] comes to ... to

4   work on goals." AR 691. Furthermore, plaintiff was missing so many classes that he was

5   failing, and it would be "counterproductive" from "an educational point of view," to have

6   plaintiff show up on the rare occasion, only to have to pull him out of general education

7   classes for speech therapy. To that end, the recommendation was made to switch plaintiff

8   to consultation services, to "hopefully give the behavior plan a chance to work, get him

9   back into school more regularly so that [the speech-language therapist] could re-engage

10  with him in a productive way." AR 690. Otherwise, plaintiff's therapist continued, "it was a

11  totally unproductive, unworkable therapeutic plan." Id.

12      The ALJ found that plaintiff's speech and language therapist, who testified to the

13  above, was a "credible and persuasive witness," and that her testimony established the fact

14  that direct speech therapy "no longer facilitated [plaintiff's] overall educational needs." AR

15  153. Furthermore, because plaintiff had already benefitted from years of speech therapy,

16  the pause in direct therapy sessions would only minimally impact plaintiff's ability to

17  improve his speech fluency. Finally, the ALJ found that plaintiff had presented no contrary

18  evidence on the issue.

19      Here, plaintiff argues only that the District's decision to switch to consultation

20  services was akin to "giving up" on its student – precisely what Congress sought to prevent

21  when it enacted the IDEA. However, plaintiff offers no authority or contrary evidence in

22  support of this argument. Indeed, the only evidence in the record – Ms. Fox's testimony –

23  established that the District was not giving up on plaintiff, and that it was attempting

24  everything possible to ensure plaintiff's continued improvement. In sum, plaintiff has not

25  presented evidence that warrants reversal of the ALJ's holding on this issue.

26      In conclusion, and with respect to the second issue presented before the ALJ – i.e.,

27  whether the District denied plaintiff a FAPE from November 13, 2003 through the 2005-06

28

**United States District Court**
For the Northern District of California

1   school year – the ALJ's decision is affirmed, and summary judgment is GRANTED in

2   defendant's favor, and DENIED as to plaintiffs.

3       3.      Whether Ms. Rodriguez was entitled to reimbursement for private school

4               placements from March 2004 to June 2006

5       Having concluded that the ALJ's decision is to be affirmed, the court also concludes

6   that Ms. Rodriguez was not entitled to reimbursement for private school placements from

7   March 2004 to June 2006. For without proof that plaintiff was denied a FAPE, no

8   reimbursement for such denial is appropriate. See Burlington v. Dep't of Educ., 471 U.S.

9   359, 374 (1985)("If the courts ultimately determine that the IEP proposed by the school

10  officials was appropriate, the parents would be barred from obtaining reimbursement for

11  any interim period in which their child's placement violated § 1415(e)(3)").

12      Moreover, as the ALJ noted, for the entire length of plaintiff's attendance at private

13  schools, Ms. Rodriguez failed to notify the District of any intent to seek reimbursement. AR

14  154. The IDEA provides that reimbursement may be denied or reduced if the parents do

15  not give the school district notice of their intent to remove a child from public school before

16  they do so. See, e.g., 20 U.S.C. § 1412(a)(10)(C)(iii)(I). Generally, parents must provide

17  such notice at the most recent IEP meeting that the parents attended prior to the removal of

18  the child from the public school, or by written notice ten business days prior to the removal

19  of the child from public school. Id.

20      Here, plaintiff was arrested in May 2003. AR 995. Several months later, the

21  November 2003 IEP meeting took place. Around that time (in November or December

22  2003), plaintiff's private therapist first recommended that plaintiff attend the Rocky

23  Mountain Academy as an alternative to Hillsdale. AR 345-46. Yet there is no evidence that

24  plaintiff or his mother informed the District of either plaintiff's arrest or the private therapist's

25  recommended education placement, at the November 2003 IEP team meeting, or

26  thereafter. Subsequent to 2003, plaintiff appeared in court in January 2004, at which

27  appearance the court stated that plaintiff could go to Rocky Mountain Academy, which is

28

United States District Court

For the Northern District of California

1    part of the CEDU program.  AR 323.  Two months later, in March 2004, plaintiff was

2    adjudged a ward of the court.  AR 996.  Still, throughout all this time, there is no evidence

3    that plaintiff or his mother informed the District of the potential private placement.  In fact,

4    Ms. Rodriguez did not contact the District to inform them of plaintiff's private placement until

5    March 22, 2004, *after* plaintiff had been adjudged a ward of the court and *after* plaintiff had

6    already left for private placement at Ascent [plaintiff went to Ascent instead of Rocky

7    Mountain Academy].  AR 837, 998, 1002.  Even then, Ms. Rodriguez never requested

8    reimbursement from the District.  The first time the District learned of the request for

9    reimbursement was when she filed the due process complaint in the underlying

10    administrative action.

11         On balance, these facts demonstrate a complete failure to provide adequate notice

12    to the District of plaintiff's private placement.  Accordingly, even if a denial of a FAPE had

13    been demonstrated, no reimbursement would be appropriate.  For all the foregoing

14    reasons, therefore, the court also affirms the ALJ's decision that reimbursement is not

15    warranted.  Defendant's motion for summary judgment on this ground is GRANTED.  The

16    court DENIES plaintiffs' cross-motion with respect to the reimbursement issue.

17         C.    Conclusion

18          The ALJ's decision is thorough, organized, and detailed, warranting a higher level of

19    deference.  To that end, the decision is affirmed in all respects.  Defendant's motion for

20    summary judgment is GRANTED, and plaintiffs' cross-motion for summary judgment is

21    DENIED.

22    **IT IS SO ORDERED.**

23    Dated: July 3, 2008

24                                                                _____

25                                                                PHYLLIS J. HAMILTON
                                                                  United States District Judge

26

27

28

24